**Complaint Concerning the Honorable John J. KIRBY, Municipal Court Judge, Ramsey County, State of Minnesota.**

**No. C8–83–1718.**

Supreme Court of Minnesota.

Aug. 17, 1984.

412

Theodore J. Collins and John R. Schulz, St. Paul, for appellant.

Douglas W. Thomson and Deborah Ellis, St. Paul, for respondent.

## PER CURIAM.

This is a judicial discipline matter that comes before this court on the recommendation of the Board on Judicial Standards for removal of the Honorable John J. Kirby, Judge of the Municipal Court, Ramsey County, for conduct prejudicial to the administration of justice which brings the judicial office into disrepute within the meaning of Minn.Stat. § 490.16, subd. 3 (1982), and the Minnesota Constitution, Article VI, Section 9, and in violation of Canons 1, 2 A, 3 A(3) and 3 A(5) of the Code of Judicial Conduct.

### PROCEDURAL HISTORY

The formal investigation in this matter was started in April of 1982. At that time Judge Kirby was sent a letter from the Board on Judicial Standards advising him that an investigation was being made into allegations of "a severe drinking problem which interferes with your ability as a judge." A second letter was sent to Kirby 14 months later, in June of 1983, reiterating the drinking concern and also informing Judge Kirby that the Board would be

examining his disposition of certain cases for which convictions had not been certified to the Department of Public Safety.

On July 20 and 21, 1983, articles reporting the newly expanded investigation appeared in the *St. Paul Dispatch* and the *Minneapolis Star and Tribune.* These articles apparently found their source in a subpoena and request for court records which the Board had issued in furtherance of its investigation of Judge Kirby.[1] The articles noted that no formal complaint had yet been filed against Judge Kirby, and that the Board would neither confirm nor deny that an investigation was under way. A substantial portion of each article consisted of quotes of Judge Kirby, who refused to discuss the Board's action but discussed at length his disposition of the traffic cases being investigated.

On September 1, 1983, Judge Kirby was served with a Statement of Allegations identifying his disposition of traffic cases, his intemperate use of alcohol in public and before conducting judicial business, and his "fail[ure] to treat attorneys in the St. Paul City Attorney's Office with dignity and respect" as misconduct warranting cause to proceed with a disciplinary proceeding.

On September 9, 1983, Judge Kirby filed a motion with the Board requesting dismissal of the proceedings or a more definite statement and identification of specific facts regarding the allegations of intoxication and discourteous treatment of St. Paul City Attorneys so that he could adequately respond to the allegations. In response to this motion, the Board wrote a letter advising Kirby that the specific facts he had requested would be furnished "prior to the conclusion of the Board's work under Rule 8 or the charges will be abandoned." The letter notified Kirby that he was required, under Rule 8,[2] to respond to the allegations

---

1. According to the attorney for the Board the subpoenas were not filed in the District Court. It therefore remains unclear how the newspaper obtained access to this particular subpoena.

2. Rule 8 reads, in pertinent part, as follows:
   **(a) Sworn Complaint or Statement.**
   (1) After a finding of sufficient cause to proceed, * * * a clear statement of the allega-

tions against the judge and the alleged facts forming their basis shall be prepared by the executive secretary. Where more than one act of misconduct is alleged, each shall be clearly set forth.

concerning his disposition of traffic cases, and that he could optionally respond, as well, to the allegations for which he had requested more specific facts.

On October 3 Kirby submitted his response to the allegations concerning his disposition of traffic cases. On October 26 he filed petitions to remove Judge Hyam Segell, a member of the Board on Judicial Standards, from taking part in consideration of the Kirby matter and to remove Theodore Collins from representing the Board as legal counsel in this matter.

On October 28, 1983, the Board issued a formal Statement of Charges against Judge Kirby. The statement alleged: (1) improper disposition of traffic cases—particularly noncertification or late certification of cases involving guilty pleas, and improper assessment of court costs; (2) habitual tardiness; (3) three instances of public intoxication and one instance of conducting judicial business after consuming intoxicants; and (4) numerous instances of discourtesies to women attorneys by calling them "lawyerettes" and questioning their failure to wear neckties. The Board had not, prior to the issuance of the Statement of Charges, provided Kirby with the specific facts he had requested so that he might respond to the allegations of intoxication and failure to treat lawyers with respect as required by Rule 8. Furthermore, the Board had not, prior to the issuance of the formal Statement of Charges, informed Judge Kirby of the tardiness charge or given him an opportunity to respond to that charge.

Judge Kirby answered the complaint on November 17, 1983, in the form of a general denial.

In November of 1983 Judge Kirby filed motions with the Board and with Judge Bruce C. Stone, the appointed referee in the matter, to dismiss the complaint against him on grounds that it was brought in violation of his rights to due process of law and fundamental fairness, or, in the alternative, to remove Judge Segell and Theodore Collins from the case. On December 16, 1983, Judge Stone denied all the motions.

Judge Kirby subsequently commenced an independent action in Dakota County District Court seeking damages and seeking to enjoin all proceedings against him pending a hearing to address alleged procedural violations of the Board's rules.

By order of December 22, 1983, Judge Mitchell dismissed the complaint with leave for Judge Kirby to petition the Minnesota Supreme Court which, Judge Mitchell found, had exclusive jurisdiction over the matter during the pendency of the disciplinary proceedings. This court then denied Judge Kirby's motion to dismiss without prejudice to the reassertion of the issues upon the filing of the Board's records, findings and recommendations.

A 6-day hearing on the complaint against Judge Kirby was held before Referee/Judge Stone. On the first day of the hearing the Board added two more alleged instances of public intoxication to its formal Statement of Charges against Judge Kirby.

The findings and recommendations of Judge Stone were filed on January 31, 1984. Judge Stone found clear and convincing proof of seven instances of public intoxication and six instances of conducting judicial business with liquor on his breath, as well as a pattern of habitual tardiness with lack of concern for such conduct. For these acts of misconduct, Judge Stone recommended public reprimand of Judge Kirby and forfeiture of 2 months' salary.

With regard to the allegations of discourtesy to women lawyers, Judge Stone found clear and convincing evidence of two occa-

(2) The judge shall be served promptly with a copy of the sworn complaint or statement of allegations. Service shall be accomplished in accordance with the Rules of Civil Procedure.

(3) The documents served under section (2) shall require the judge to respond to the complaint or statement in writing within 20 days. A personal appearance before the factfinder shall be permitted in lieu of or in addition to a written response.

sions on which Judge Kirby referred to two separate female attorneys as, in one instance, a "lawyerette", and in another instance, an "attorney generalette," but he found no showing that the comments were designed to injure. Aside from these two occasions, Judge Stone found that Judge Kirby "was courteous in his treatment of attorneys and litigants and conducted his courtroom with appropriate judicial demeanor." Judge Stone recommended that Judge Kirby's apology in open court for any offense caused by these comments, combined with the adverse publicity he has suffered for this conduct, constituted sufficient penalty and that any additional disciplinary action for these two incidents would be unduly harsh.

Finally, with regard to Judge Kirby's disposition of certain traffic cases (i.e., taking a guilty plea under advisement and ultimately dismissing the case and assessing court costs without certification to the Department of Public Safety if the defendant met certain conditions), Judge Stone found that the procedure has neither been specifically approved nor forbidden by either state statute or judicial rule, and that different lawyers and judges view it with varying degrees of approval or disapproval. Judge Stone found no evidence that Judge Kirby employed this procedure fraudulently, with corrupt motive or in bad faith. Based on these findings, Judge Stone concluded that Rule 4(b) of the Rules of the Board on Judicial Standards [3] disallows the taking of disciplinary action for this conduct.

After both the Board and Judge Kirby filed objections to Judge Stone's findings, the Board filed the recommendation for removal which is now before us. The Board no longer asserts the ground of public intoxication as a basis for its recommendation. Judge Kirby reasserts his constitutional deprivation of due process claim, argues that the referee's findings of improper consumption of alcoholic beverages, dis-

courtesy to women lawyers and habitual tardiness are not supported by clear and convincing evidence and finally, Judge Kirby argues that no fraud, corrupt motive or bad faith was shown and therefore, that his disposition of certain traffic cases is not a proper ground for judicial discipline.

## DISCOURTEOUS BEHAVIOR

We first address the issue of Judge Kirby's discourtesy to female attorneys. Canon 3 A(3) of the Code of Judicial Conduct states in pertinent part:

"A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers and others with whom he deals in his official capacity * * *."

In 1979 or 1980, in the office of the Clerk of Court, St. Paul, Minnesota, Judge Kirby referred to Mary Bjorklund, a prosecuting attorney, as "lawyerette" and asked her why she wasn't wearing a tie. While Judge Stone found there was no showing this comment was designed to injure, he also found that it was not made under circumstances that invited the good humored banter that sometimes exists among judges and lawyers and that Bjorklund was justifiably annoyed and disturbed.

On November 4, 1983, at a hearing in chambers, Judge Kirby referred to Penny Troolien, an attorney employed by the Minnesota Attorney General's office, as an "attorney generalette". Troolien, Judge Stone concluded, was also justifiably annoyed and disturbed. We agree with Judge Stone that such behavior is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. But we cannot concur with Judge Stone's conclusion that no further punishment is warranted beyond the adverse publicity Judge Kirby suffered and the apology he made in open court. We do consider this conduct grounds for censure. Such appellations are offensive and tend to de-

---

**3.** Rule 4(b) provides as follows:

In the absence of fraud, corrupt motive, or bad faith, the board shall not take action against a judge for making findings of fact, reaching a legal conclusion, or applying the law as he understands it. Claims of error shall be left to the appellate process.

mean and to place the lawyer referred to on a less than equal footing with other lawyers. We are mindful of Plutarch's wise observation: "Tho' boys thro' stones at frogs in sport, the frogs do not die in sport, but in earnest." Male and female attorneys should be treated with equal respect and courtesy by the judges before whom they appear.

## INTOXICATION

The Statement of Allegations served on Judge Kirby provided in part:

That you, Honorable John J. Kirby have been intemperate in your use of alcohol in that, among other examples, you have been late for Court because of drinking alcohol, that you have had a strong odor of alcohol on your breath and other indications of drinking while on the bench; that on occasion you have gone to local bars and not returned to the Court and you have been under the influence of alcohol while serving as a judge, and have been under the influence of alcohol in public places.

Because of the general nature of the allegations, Judge Kirby found it impossible to answer with any specificity. The Board had promised, in response to Judge Kirby's request for greater specificity, that he would be furnished with specifics or the charge would be abandoned. Specifics were not furnished but the charges were not abandoned. Thus Judge Kirby was deprived of the opportunity to meet and refute, if possible, any of the allegations prior to the time the Statement of Charges was filed and the case became public.

█ A judge is guaranteed due process of law in a disciplinary investigation and hearing by Rule 9(b), Rules of Board on Judicial Standards.[4] The opportunity to be heard at a meaningful time and in a meaningful manner is the fundamental due process requirement; but due process is flexible, calling for the procedural protection demanded by the particular situation.

*Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). This court has held judicial removal to be "neither civil nor criminal in nature, but *sui generis,* designed to protect the citizenry by insuring the integrity of the judicial system." *In re Gillard,* 271 N.W.2d 785, 812 (1978). *Gillard* incorporated into the judicial discipline context the due process standard for attorney discipline cases as enunciated by *In re Rerat,* 224 Minn. 124, 28 N.W.2d 168 (1947). To meet due process requirements, "the charges of professional misconduct, though informal, should be sufficiently clear and specific, in the light of the circumstances of each case, to afford the respondent an opportunity to anticipate, prepare, and present his defense." 224 Minn. at 129, 28 N.W.2d at 172–73. *See also In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968).

The *Gillard* court found no constitutional infirmity in the procedure afforded because only collateral findings of three out of eighteen complaints involved misconduct that was not generally alleged in the disciplinary petitions. In contrast, the allegations of intoxication and discourteous treatment of attorneys formed two of the four major allegations against Judge Kirby. This failure to give adequate notice cannot be disposed of, as in the *Gillard* case, as merely a collateral matter.

█ The Board incorrectly argues that Rule 8 "clearly gives the Board the option of filing *either* a confidential statement of allegations or a formal public Complaint following a determination of probable cause." Rule 8(a) sets out the following mandated procedure:

1. Rule 8(a)(1): After sufficient cause is found, the complainant files a detailed sworn complaint.

Where there is no sworn complaint (as when the investigation has been initiated by the Board or the complainant refuses to file), a clear Statement of Allegations *shall*

---

4. Rule 9(b) Rules of Board on Judicial Standards provides: "In the hearing, all testimony shall be under oath, the Minnesota Rules of

Evidence shall apply, and the judge shall be accorded due process of law."

be prepared, clearly setting forth *each* allegation.

2. Rule 8(a)(2): The judge must be promptly served with either the sworn complaint or the Statement of Allegations.

3. Rule 8(a)(3): The judge is required to respond within 20 days either in writing or by personal appearance at the judge's option.

4. Rule 8(b): The Board may then terminate the proceeding and dismiss the complaint.

5. Rule 8(c): If the proceeding is not terminated, the Board *must* then file a formal Statement of Charges.

■ In failing to give Judge Kirby an opportunity to respond to *each* allegation prior to making the allegations public, the Board has breached its own procedural regulations. These regulations have not been arbitrarily established. The mandated sequence of operation serves a very important purpose in the judicial discipline context.

To protect the judge's reputation and effectiveness on the bench from groundless or reckless charges, the judge should have the opportunity to clarify or rebut such charges. The Board should have the opportunity to "use its influence to correct a judge's behavior before his public reputation has been damaged." Gasperini, Anderson & McGinley, *Judicial Removal in New York*, 40 Fordham L.Rev. 1, 31 (1971).

An investigation into a judge's conduct on or off the bench should not be, and should not give the appearance of being, a witch hunt. Professional behavior, concern for all parties involved and, above all, for the public's respect for the integrity of the judiciary should at all times characterize the Board's conduct. Adherence to its own rules of procedure will ensure such objectivity. We strongly encourage the Board to do so in the future.[5]

Despite our concern about the insufficient notice Judge Kirby received, we do not find the Board's actions in ignoring its own rules so violative of due process as to raise the concern that fundamental fairness may not have attached. *Behagen v. Intercollegiate Conference of Faculty Representative*, 346 F.Supp. 602, 606 (D.Minn. 1972). The allegations of intoxication and discourtesy were sufficiently specific to have apprised Judge Kirby with reasonable certainty of the allegations against him and were not so vague as to mislead him or prevent him from preparing an adequate defense.[6] *In re Kunkle*, 88 S.D. 269, 218 N.W.2d 521, *cert. denied*, 419 U.S. 1036, 95 S.Ct. 521, 42 L.Ed.2d 312 (1974). Hence, we are not precluded from examining those allegations.

The Board abandoned the allegation of public intoxication as a basis for its recommendation for removal. Judge Stone, however, found that seven instances of public intoxication had been established by clear and convincing evidence. In addition, Judge Stone found six instances of conducting judicial business "with liquor on his breath" giving the appearance of having been drinking, had been established by clear and convincing evidence, and those the Board did not abandon.

5. The referee, Judge Stone, found that in view of the letter from the chairman of the Board promising to further substantiate the charges and the apparent misunderstanding between the parties as to whether Judge Kirby would or would not appear, the greater fairness dictated that it would be far preferable to again afford Judge Kirby an opportunity, if he desired, to respond or comment to the Board upon the allegations of misconduct. The Board did not follow Judge Stone's recommendation and did not provide Judge Kirby with a further opportunity to respond.

6. We note that in the past this court has granted motions to strike various allegations on the grounds that the charges were unlimited in scope, too indefinite and uncertain, and not made in a direct and positive manner. *See In re Rerat*, 224 Minn. at 132, 28 N.W.2d at 174. Obviously, Judge Kirby could have brought a motion to strike these allegations on the *Rerat* grounds.

While it is true, as Judge Kirby alleges, there were many witnesses who had appeared before him on hundreds of occasions who did not observe such an odor, the five who did testify to having detected alcohol may either have been more observant, or just happened to be in court at the "right" time. The referee had the opportunity to observe the witnesses and assess their credibility and his findings have support in the record.

These are repeated violations of the Code of Judicial Conduct that constitute conduct prejudicial to the administration of justice that brings the judicial office into disrepute, within the meaning of Minn.Stat. § 490.16(3) (1982) and Canons 1, and 2 A of the Code of Judicial Conduct.[7]

In fairness to Judge Kirby the findings do not indicate that, except for a single instance when he did not expect to have to come back to the court, Judge Kirby was ever intoxicated while performing the public's business. Nor is there any showing that the use of alcoholic beverages had any effect on his decisions. But we agree with Judge Stone that it is not only the effect on the individual judge's work with which the Code of Judicial Conduct is concerned. It is also concerned with the perception of the public upon the administration of justice in general and upon the over 200 other judges in this state in particular. The instances of public intoxication and of conducting judicial business "with liquor on his breath" constitute conduct such as warrants discipline.

### TARDINESS

The Statement of Charges included allegations of tardiness and Judge Stone found, with adequate support in the record, that Judge Kirby has been tardy, repeatedly and flagrantly, in coming to and commencing court. The degree of tardiness ranged from 15 minutes to over one and a half hours, more on a few occasions. Judge Kirby rarely explained his tardiness to lawyers, litigants or witnesses, caused lawyers, litigants, witnesses and court personnel considerable inconvenience by his tardiness, and exhibited a lack of concern for such conduct, even to the extent of expressing a philosophy that "being prompt is not a virtue." Though the estimates of witnesses differed, Judge Stone found Judge Kirby was unreasonably tardy at least 20% of the time.

Canon 3 A(5) of the Code of Judicial Conduct states: "A judge should dispose promptly of the business of the court."

Also, Canons 1 and 2 A require high standards of conduct in a manner that promotes public confidence.

These are not platitudes as Judge Kirby's attorney would have us believe. As Judge Stone eloquently declared, if there is anything more important to the relationship of the public and the judiciary (except judicial integrity and judicial fairness) it is punctuality—promptness in hearing as well as promptness in decision.

A delay of just 30 minutes per case, given the numbers of people involved, represents enormous expense to the public and the private sector through loss of working hours and increased attorney fees. A repeated and flagrant disregard for punctuality is conduct prejudicial to the administration of justice that brings the judicial office

---

7. On recommendation of the board on judicial standards, the supreme court may retire a judge for disability that seriously interferes with the performance of his duties and is or is likely to become permanent, and censure or remove a judge for action or inaction that may constitute persistent failure to perform his duties, incompetence in performing his duties, habitual intemperance or conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
Minn.Stat. § 490.16, subd. 3 (1982).

Canon 1 of the Code of Judicial Conduct states in applicable part: "A judge should participate in establishing, maintaining and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved."

Canon 2 A states: "A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

into disrepute within the meaning of Minn. Stat. § 490.16(3).

■ The first assertion of tardiness against Judge Kirby was made in the public Statement of Charges. The Board violated its own rules by failing to include a claim of failure to be prompt in the original Statement of Allegations or even in an amendment to the original. Judge Kirby was thus deprived of the opportunity to respond in a confidential setting to the allegation of habitual tardiness. We reiterate: the purpose of the opportunity to respond is to be able to explain or present mitigating facts so that the Board may determine whether there is sufficient validity to the claims to justify either proceeding with a disciplinary hearing or dismissing the case.

We do not condone the Board's action in failing to provide Judge Kirby with the opportunity to respond and we suggest to the Board that the opportunity be provided in future cases of judicial discipline.

However, there were so many instances, and so many witnesses testified to so many instances, of tardiness that we are convinced there was no sufficient defense or excuse or justification which would have brought about a dismissal of the tardiness charge. Thus we do consider the judge's tardiness in this proceeding and we conclude that this conduct does violate the Canons of Judicial Conduct and Judge Kirby is subject to discipline for such violations.

### TRAFFIC CASE DISPOSITIONS

The parties do not dispute that Judge Kirby has, in a number of cases involving charges of driving after revocation, suspension or cancellation of license, taken guilty pleas under advisement and subsequently dismissed the charge and assessed court costs when the defendant has complied with certain conditions including obtaining reinstatement of the license. The parties do not agree, however, on the legality of this procedure or on Judge Kirby's motivation or intent in utilizing the procedure.

The Board is of the opinion that, through this dismissal procedure, Judge Kirby "knowingly and intentionally frustrated the intent and purposes of the laws he was bound to uphold." Specifically, the Board points out that Minn.Stat. § 171.16, subd. 1 (1982), requires certification of convictions for driving offenses to the Department of Public Safety within 10 days of the conviction date. Minn.Stat. § 169.95 (1982) states that the "failure, refusal, or neglect" of any judicial officer to certify such convictions "shall constitute misconduct in the office and shall be ground for removal therefrom." Finally, the Board notes that Minn.Stat. § 171.01, subd. 13 (1982), defines *conviction* as "a final conviction either after a trial or upon a plea of guilty." Reading these sections together, the Board argues that Judge Kirby was required to accept, record, and certify all guilty pleas in traffic cases. By his refusing to accept and record the pleas and his willingness to dismiss the charges if the defendant met certain conditions, Judge Kirby, the Board contends, brought himself within the misconduct described in Minn.Stat. § 169.95 (1982).

Judge Stone evaluated Judge Kirby's dismissal procedure and found that it involved reaching a legal conclusion and applying the law as the judge understands it, for which the Board on Judicial Standards is forbidden by Rule 4(b), Rules of Board on Judicial Standards, to impose judicial discipline, in the absence of fraud, corrupt motive or bad faith.[8] Judge Stone analogized the dismissal procedure to the diversionary program in criminal law which has proven beneficial for first-time offenders. Judge Stone recognized that Judge Kirby's practice is laudable to the extent that it enables many to obtain driver's licenses and to be insured against damages resulting from accident, rather than having them "sneak and drive" without such insurance, and that it also enables the breadwinner of the family

---

**8.** Rule 4(b) serves as a necessary limitation upon the Board on Judicial Standards as well as a direction to those who would complain about a proper decision.

to maintain employment that requires long distance transportation to and from work. At the same time, however, Judge Stone noted that the practice carries with it the following problems:

1. There is no formal record of guilt.

2. The Commissioner [of Public Safety] is not advised of the plea of guilty and cannot impose appropriate license restrictions for it.

3. The prosecution is deprived of an opportunity to prosecute, in many cases, a legitimate complaint.

4. Defendants with poorer driving records are, on occasion, treated more leniently than the first-time offender.

5. Costs are sometimes imposed for an offense in which there is not a formal conviction.

After careful consideration, Judge Stone concluded that Judge Kirby's practice was not a proper basis for judicial discipline. He found no evidence to support the Board's claim that Judge Kirby had utilized the procedure fraudulently, with corrupt motive or in bad faith. The Board cites remarks by Judge Kirby about getting around the statutes or sidestepping the legislature as evidence of bad faith on his part. Because of the legislative history of Minn.Stat. § 169.95 (Supp.1983), Judge Kirby often referred to it as the "Kirby Bill." In *Novak v. Kirby,* 287 N.W.2d 621, 623 (Minn.1979), this court had decided that, under Minn.Stat. § 169.121, subd. 5 (1969), and our prior decision in *Dept. of Public Safety v. Mulvihill,* 303 Minn. 361, 368, 227 N.W.2d 813, 817–18 (1975), a trial court had the right to stay the revocation of drivers' licenses. We declared we relied on *Mulvihill* because no amendments to the applicable law had indicated a contrary legislative intent, and we stated:

The legislature has paramount authority to deal with the revocation of drivers licenses to the exclusion of the Commissioner of Public Safety. We therefore suggest that doubts as to the correctness of our interpretation may be resolved by submitting the question to the legislature in its forthcoming session.

287 N.W.2d at 623–624. The legislature responded by amending Minn.Stat. § 169.121, subd. 5, to remove the power of a court to stay the revocation of a driver's license as follows:

The court may stay imposition or execution of any sentence authorized by subdivision 3 or 4, *except the revocation of the driver's license,* on the condition that the convicted person submit to treatment by a public or private institution or a facility providing rehabilitation for chemical dependency licensed by the department of public welfare. A stay of imposition or execution shall be in the manner provided in section 609.135. The court shall report to the commissioner of public safety any stay of imposition or execution of sentence granted under the provisions of this section.

Act of March 25, 1981, ch. 9, § 1, 1981 Minn.Laws 17.

The Board argues that by refusing to accept guilty pleas, Judge Kirby avoided the label "conviction" thus circumventing the reporting statutes and retaining his power to stay license revocation. An individual judge is, however, empowered by Minn.Stat. § 631.21 (1982) with the discretion to dismiss a case if the reasons for dismissal are stated.

The court may, either of its own motion or upon the application of the prosecuting officer, and in furtherance of justice, order any criminal action, whether prosecuted upon indictment, information, or complaint, to be dismissed; but in that case the reasons for the dismissal shall be set forth in the order, and entered upon the minutes, and the recommendations of the prosecuting officer in reference thereto, with his reasons therefor, shall be stated in writing and filed as a public record with the official files of the case.

While there seems to be some indication that Judge Kirby disapproved of the legislative handling of license revocations, his actions do not rise to the level of bad faith.

His testimony reveals that, in fact, his motivation for this procedure was to rehabilitate the defendants so that they would not become habitual offenders.

While we do not and will not countenance clear evasion of statutory requirements by judges, we cannot act upon generalizations. The record here does not contain sufficient detail on the individual cases to warrant a determination that Judge Kirby's handling of the individual cases was proper or improper. Certainly there is no substantive basis for a conclusion that the judge acted fraudulently, with corrupt motive, or in bad faith.

We suggest that prosecutors who take issue with a judge's sentencing or other handling of a traffic matter seek corrective action before an appellate court. Action in a particular case may be reviewed by an independent court and a decision rendered which will determine the individual case as well as provide foundation for the disposition of other like cases.

At any rate, we agree with Judge Stone that the record of Judge Kirby's disposition of traffic cases does not reveal grounds for disciplinary action.

## PETITIONS TO REMOVE

█ Judge Kirby gave no reasons for petitioning to remove Judge Segell from serving as a Board member reviewing his case other than the fact that Judge Segell was a colleague of Judge Kirby's on the Ramsey County bench. Neither does Judge Kirby suggest any rule or authority requiring Judge Segell to recuse himself. Nonetheless Rule 9(b) demands that the judge be accorded due process of law in a formal hearing before the Board and due process at a minimum demands an impartial tribunal. Rule 1(b) contemplates possible disqualification of a Board member and outlines the method of replacement by alternate members.[9] We suggest the statutory authority to appoint alternates be ex-

ercised so that in these situations a challenged Board member might step aside and have an alternate serve. The failure of Judge Segell to disqualify himself does not amount to a violation of the due process requirement of a neutral arbiter because the Board consists of nine members, not a sole judge. The impartiality of the remaining eight Board members would have countermanded any possible bias on the part of Judge Segell and no affirmative showing was made that Judge Segell could not be fair and impartial.

█ Judge Kirby requested that Mr. Collins, the attorney for the Board, be removed from this case because Mr. Collins represented Judge Kirby's ex-wife in a bitterly contested divorce action in 1966. Judge Kirby claimed that there has been ongoing animosity between him and Mr. Collins and that Mr. Collins had recused himself from another case involving Judge Kirby because of such conflict of interest.

There is simply no statutory or case authority requiring an attorney to be removed on the grounds presented here. Moreover, the attorney representing the Board is not an arbiter and, since his or her function is necessarily adversarial, no constitutional error can be found.

## FURTHER DUE PROCESS CHALLENGES

█ Two of Judge Kirby's due process challenges are completely without merit. Rule 6(c)(2), Rules of Board on Judicial Standards, states that the executive secretary shall determine if sufficient cause exists to proceed against the judge "under guidelines prepared by the board." There is no mandatory direction, under these rules, to promulgate formal guidelines. Judge Stone found that the absence of those guidelines results in the standard for "sufficient cause" being the ordinary and usual rule of "probable cause." He also held that this failure to formulate guide-

---

9. Alternate members, to take the place of those disqualified or absent, shall be selected at the time and in the manner prescribed for initial appointments in each representative class, and shall serve at the call of the board chairperson.
Rules of Board on Judicial Standards 1(b).

lines would not affect the validity of the proceedings as to Judge Kirby. The evidence clearly shows that the Board had sufficient evidence to meet the probable cause standard and to proceed under Rule 8. There is no due process violation as to this objection.

 Neither is Judge Kirby justified in his request for a jury trial. As in all administrative hearings, a judge has no right to a jury trial. *In re Daly*, 284 Minn. 567, 171 N.W.2d 818 (1969).

## BOARD'S SUBPOENA POWER

 Rule 2(e) grants the subpoena power to both the Board and any judge being investigated, "[a]t all stages of a proceeding under these rules." The literal meaning of this rule is very broad, consistent with the broadly construed inquisitional subpoena powers granted by all the states to administrative agencies including various professional boards. *See generally,* Rogge, *Inquisitions by Officials: A Study of Due Process Requirement in Administrative Investigations II,* 48 Minn.L.Rev. 557, 585–86 (1964). Although the subpoena power is broad, it is not unlimited and the availability of a motion to quash a subpoena is adequate protection against abuse.

## DISCIPLINE

 On the basis of his discourteous treatment of female attorneys, his public intoxication, his conducting of judicial business with alcohol on his breath and his habitual tardiness, we hereby publicly censure Judge John J. Kirby for conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

We do not adopt the referee's recommendation that Judge Kirby forfeit two months' salary nor the Board's recommendation that he be removed from office. We reject the Board's recommendation that we assess costs and expenses against him as Rule 11 precludes the assessment of witness fees and expenses, transcripts and other costs of the proceedings.

It is the order and judgment of this court that respondent, John J. Kirby, be and hereby is, publicly censured.

TODD, J., took no part in the consideration or decision of this case.