*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1819**

Winhaven Court Apartments,
Respondent,

vs.

Sally Carney,
Appellant.

**Filed August 31, 2015
Affirmed
Peterson, Judge**

Winona County District Court
File No. 85-CV-14-1601

Angela V. Lallemont, Price, McCluer & Plachecki, Winona, Minnesota (for respondent)

Brian N. Lipford, Michael Hagedorn, Southern Minnesota Regional Legal Services, Inc., Rochester, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Peterson, Judge; and Hooten, Judge.

## U N P U B L I S H E D   O P I N I O N

**PETERSON**, Judge

Appellant-tenant challenges her eviction from respondent-landlord's apartment building, arguing that the district court (1) erred by denying her motion to dismiss the eviction action because her notice of lease termination violated a federal regulation and was insufficient to enable her to prepare a defense and (2) abused its discretion by

granting respondent's motion to reopen the trial record to include evidence of her posttrial behavior. We affirm.

## FACTS

Appellant Sally Carney rented an apartment from respondent Winhaven Court Apartments under a written lease agreement and received Section 8 housing assistance. In April and May 2014, Carney received written warnings about violating Winhaven policies by removing items from Winhaven's recycling bins and depositing cat litter in Winhaven's trash room. In June 2014, Carney received notice that her lease would be terminated effective July 31, 2014, and she was directed to vacate the premises. The termination notice stated that the lease termination was due to "material non-compliance [with] the provisions of the Lease Agreement, and other good cause," including

> repeated minor violations of the lease that (a) disrupt the livability of the project[,] (b) adversely affect the health or safety of any person or the right of any tenant to the quiet enjoyment [of] the leased premises and related project facilities, [and] (c) interfere with the management of the project.

The termination notice specified that Carney violated her lease by "[d]isturbing or harassing . . . other residents," committing "[v]erbal or physical assault on the owner or his agent" and "on another resident," and "[r]emoving items from recycling bins and/or trash from trash containers." The termination notice stated that Carney had the right to submit written comments concerning the lease termination and to meet with a Winhaven representative.

2

Carney did not vacate the premises, and Winhaven commenced this eviction action. Winhaven alleged in its complaint that Carney "engaged in repeated minor violations of the lease, including . . . removing items from recycling bins and/or trash from the trash receptacles," "violating the pet rules at [Winhaven by failing] to deposit her kitty litter in the outside trash bin," screaming at and harassing another tenant and Winhaven management, and "interfering with the management of Winhaven."

At an initial hearing, Carney denied some allegations, contended that the others were insufficient to terminate a subsidized-housing tenant, and moved for dismissal of the eviction action. The district court scheduled the matter for trial. When the parties appeared for trial, Carney reasserted her motion to dismiss. She argued that dismissal was appropriate because Winhaven failed to comply with a Department of Housing and Urban Development (HUD) regulation requiring that a termination notice "state the reasons for [lease termination] with enough specificity [so] as to enable the tenant to prepare a defense." Winhaven argued that Carney's attorney had met with Winhaven's attorney and manager, was given Carney's entire rental file, and had adequate information and time to prepare a defense.

The district court determined that the termination notice was sufficient, and the case proceeded to trial. At the end of trial, the district court took the matter under advisement and instructed Carney "not to go digging through the garbage anymore and to take your kitty litter out to the dumpster and not to be abusive to any other tenants or any other people in management."

Two weeks after trial, Winhaven moved to reopen the trial record to include evidence of Carney's posttrial behavior. Winhaven maintained that Carney continued to "dig[] in the trash and recycling bins" and to "undermine management and engage in abusive behavior that is disruptive to the facility." The district court granted the motion to reopen and had Carney testify about her posttrial behavior, stating, "This goes directly to . . . Carney's credibility which is still a matter under advisement, and I'm still waiting to resolve, so we'll find out what she has to say about this now."

The district court later directed entry of judgment for Winhaven and ordered Carney to vacate the premises. The district court found that Carney repeatedly violated her lease by digging through the trash and recycling bins in the trash room, by depositing cat litter in the trash room inside her apartment building rather than taking it outside to the dumpster, and by verbally abusing other tenants and Winhaven employees. The district court further found that Carney continued to dig through the trash and recycling bins and to deposit cat litter inside the building even after the court directed her not to do so. The district court concluded that Carney was in material noncompliance with the terms of her lease. This appeal follows.

**DECISION**

**I.**

Carney argues that the district court erred by denying her motion to dismiss the eviction action due to a deficient termination notice. A HUD regulation states:

> [A] landlord's determination to terminate [a] tenancy shall be in writing and shall: (1) [s]tate that the tenancy is terminated on a date specified therein; (2) *state the reasons*

4

> *for the landlord's action with enough specificity so as to enable the tenant to prepare a defense*; (3) advise the tenant that if he or she remains in the leased unit on the date specified for termination, the landlord may seek to enforce the termination only by bringing a judicial action, at which time the tenant may present a defense; and (4) be served on the tenant . . . .

24 C.F.R. § 247.4(a) (2015) (emphasis added); *see also* 24 C.F.R. § 247.1 (2015) (stating that the provisions of section 247 governing subsidized projects apply to all decisions by a landlord to terminate the occupancy of a tenant in a Section 8 subsidized housing project). A lease termination is invalid if it does not accord with the requirements of section 247.4. 24 C.F.R. § 247.3(a) (2015). The interpretation of an administrative regulation and the application of a regulation to undisputed facts are questions of law that are reviewed de novo. *City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 5 (Minn. 2008) (regulation application); *In re Cities of Annandale & Maple Lake NPDES/SDS Permit Issuance*, 731 N.W.2d 502, 516 (Minn. 2007) (regulation interpretation).

The parties dispute the level of specificity needed to meet the requirement in 24 C.F.R. § 247.4(a) that a termination notice contain "enough specificity so as to enable the tenant to prepare a defense." There is no Minnesota caselaw interpreting or applying this regulatory language, but courts of this state have applied similar language in other contexts. The supreme court has stated that a petition alleging professional misconduct by a judge or an attorney must "be sufficiently clear and specific, in the light of the circumstances of each case, to afford the respondent an opportunity to anticipate, prepare, and present his defense." *Complaint Concerning Kirby*, 354 N.W.2d 410, 415 (Minn. 1984) (quotation omitted). "[F]ormal allegations" are not required because information

5

will continue to develop as a case progresses, but the allegations must be "sufficiently definite to apprise respondent of the nature of the charge." *In re Rerat*, 224 Minn. 124, 129-30, 28 N.W.2d 168, 173 (1947) (quotation omitted). Applying these principles, the supreme court has concluded that petitions were sufficient when they generally described the alleged misconduct and stated the rule or rules allegedly violated. *See, e.g.*, *In re Disciplinary Action Against Michael*, 836 N.W.2d 753, 760-61 (Minn. 2013) (stating that the petition discussed the attorney's conduct while representing her clients and listed the professional rules allegedly violated); *In re Disciplinary Action Against Murrin*, 821 N.W.2d 195, 206 (Minn. 2012) (stating that the petition recounted the attorney's abuse of the litigation process and listed the professional rules allegedly violated).

And in the criminal context, courts have stated that a complaint must inform a defendant of the "nature and cause of the accusation" by "contain[ing] such descriptions of the offense charged as will enable him to make his defense" and "to protect him from subsequent prosecution for the same offense." *State v. Chauvin*, 723 N.W.2d 20, 29-30 (Minn. 2006) (quotations omitted); *see also State v. Waukazo*, 269 N.W.2d 373, 375 (Minn. 1978) (stating that the allegations against the defendant must not be "so vague under the circumstances as to make it impossible for a defendant to prepare his defense"). A complaint "should recite the essential facts which constitute the elements of the crime and which bring the activity within the scope of the criminal statute." *State v. Jannetta*, 355 N.W.2d 189, 194 (Minn. App. 1984), *review denied* (Minn. Jan. 14, 1985). "Other facts beyond the material elements of the offense [a]re available through discovery procedures." *State v. Bias*, 419 N.W.2d 480, 486-87 (Minn. 1988); *see also State v.*

6

*Hokanson*, 821 N.W.2d 340, 349 (Minn. 2012) ("Criminal defendants have a broad right to discovery in order to prepare and present a defense.").

Based on these interpretations and applications of similar language in similar contexts, we conclude that, at least with respect to the allegation that Carney removed items from recycling bins and trash from trash containers, the termination notice that Carney received contained "enough specificity so as to enable [her] to prepare a defense." This allegation was sufficiently definite to apprise Carney of this reason for terminating her lease and to afford her an opportunity to anticipate, prepare, and present a defense.

Carney argues that the notice was not sufficiently specific because it did not identify the items taken from bins or containers, state when the items were taken, and describe the locations of the bins and containers. But all Winhaven residents had been given a notice that stated:

> Once in the trash bins the trash is not to be disturbed and no one is permitted to open someone else's trash bag for any reason. NO RESIDENT or NON-RESIDENT UNDER ANY CIRCUMSTANCES ARE TO REMOVE ANY TRASH OR RECYCLABLE ITEMS FROM THESE ROOMS. Any resident found doing so will be in violation of Community Rules and will therefore be issued a lease violation.

Under this rule, no item was to be taken from any bin or container at any time. The essential fact that constituted a lease violation was that any trash or recyclable item was removed from any bin. We do not interpret the requirement for "enough specificity so as to enable the tenant to prepare a defense" to mean that the termination notice must provide enough information to enable the tenant to respond to whatever evidence of a violation the landlord possesses. Such an interpretation would mean that the notice

7

would need to describe all of the landlord's evidence. That level of specificity is not required even in a criminal proceeding where the accused faces the possibility of incarceration.

The termination notice informed Carney that Winhaven had decided to terminate her tenancy, in part, because she had removed items from the trash and recycling bins, and Carney had the opportunity to discover further information related to her defense during a meeting with Winhaven's representatives and by examining her rental file.[1] The district court did not err by denying Carney's motion to dismiss the eviction action.

## II.

Carney argues that the district court abused its discretion by granting Winhaven's motion to reopen the trial record to include evidence of her posttrial behavior. "Allowing a party to reopen his case for the purpose of presenting additional testimony is a matter within the discretion of the [district] court, and [that] action will not be disturbed on appeal absent a showing of abuse of that discretion." *King v. Larsen*, 306 Minn. 546, 546, 235 N.W.2d 620, 621 (1975); *see also Sports Page, Inc. v. First Union Mgmt., Inc.*, 438 N.W.2d 428, 430 (Minn. App. 1989) (determining that a district court did not abuse its discretion by allowing a party to reopen its case where no inadvertence, forgetfulness, lack of preparation, or bad faith was exhibited and where the reopening did not prejudice the opposing party).

---

[1] Because removing items from trash and recycling bins was a sufficient basis for terminating Carney's lease, we will not separately address the other reasons for termination stated in the termination notice.

The issues presented at trial were whether Carney committed the behavior alleged by Winhaven and whether her behavior justified lease termination and eviction. The alleged posttrial behavior—that Carney dug through trash and recycling bins, improperly disposed of cat litter, undermined Winhaven management, and engaged in abusive behavior—was the same type of behavior that was alleged in the complaint and that was at issue during trial. Evidence that further incidents occurred after trial, despite the district court's warning to Carney at the end of trial, was relevant to the district court's decision about whether lease termination and eviction were justified. The district court did not abuse its discretion by granting Winhaven's motion to reopen the record.

**Affirmed.**