834 P.2d 290

**Inquiry Concerning: Judge Phillip M. Becker.**

**IDAHO JUDICIAL COUNCIL, Petitioner,**

v.

**Judge Phillip M. BECKER, District Judge, Fifth Judicial District, State of Idaho, Respondent.**

No. 19720.

Supreme Court of Idaho, Boise, April 1992 Term.

April 30, 1992.

On Denial of Motion for Leave to Produce Additional Evidence and Petition for Rehearing June 11, 1992.

R. Keith Roark, Special Examiner for petitioner, of the firm of Roark, Donovan, Praggastis, Rivers & Phillips, in Hailey, argued.

Hollifield, Tolman & Bevan, Twin Falls, for respondent. William R. Hollifield argued.

JOHNSON, Justice.

This is a judicial discipline case. The primary issues presented are: (1) whether District Judge Phillip M. Becker of the Fifth Judicial District violated Canon 2(A) of the Idaho Code of Judicial Conduct (the Code) by conduct that detracts from public confidence in the integrity of the judiciary, and (2) if so, what sanction the Court should impose because of the violation.

We find that Judge Becker violated Canon 2(A) by his habitual intemperance, abuse of alcohol, and operation of a motor vehicle while he was under the influence of alcohol. We suspend Judge Becker from his duties as a district judge for three months, without salary, and subject to conditions during the suspension and during the balance of his current term in office, which expires on the first Monday in January 1995.

## I.
### THE BACKGROUND AND PRIOR PROCEEDINGS.

In 1983, Judge Becker became a district judge in the Fifth Judicial District after serving seven years as a magistrate judge. Until 1989, Judge Becker was considered to be a qualified, fair judge whose demeanor and professionalism complied with the standards set for the Idaho judiciary in the Code.

Beginning in 1989, Judge Becker's behavior in the performance of his judicial duties changed. Other judges in the Fifth Judicial District as well as Judge Becker's court clerk and court reporter observed that he became withdrawn and exhibited episodes of bizarre behavior. He began having mood swings and became less tolerant.

Prior to March 1991, a magistrate judge in the Fifth Judicial District and Judge Becker's law clerk each confronted Judge Becker concerning his use of alcohol. Judge Becker told them he did not have a problem with alcohol.

For at least five years prior to March 1991, Judge Becker's family knew he had an alcohol problem and tried unsuccessfully to have Judge Becker control his use of alcohol.

On several occasions after November 1990, court personnel, law enforcement officers, and other judges smelled alcohol on Judge Becker's breath while Judge Becker was in the courthouses in Gooding County and Jerome County. On one occasion, in the presence of his court reporter and at least two attorneys, Judge Becker took a bottle of alcoholic beverage out of his desk drawer in his chambers, offered the attorneys a drink, which they declined, and then took a drink directly from the bottle. On another occasion during working hours, Judge Becker took a bottle of alcoholic beverage from under the seat of the county vehicle assigned to him and took a drink directly from the bottle in the presence of his court reporter, stating to the reporter, "You didn't see this."

In March 1991, Judge Becker's conduct was investigated by the Idaho Judicial Council (the Council). The Council investigated a complaint by the Twin Falls County prosecuting attorney concerning an incident in December 1990 in which Judge Becker made a derogatory comment to local law enforcement officers. The Council also investigated a general allegation that Judge Becker had abused the use of alcohol.

In March 1991, after the Council had commenced its investigations, Judge Becker's family and friends engaged in an "intervention." As a result of the intervention, Judge Becker agreed to participate in a thirty-day inpatient alcohol abuse treatment program at a facility outside the state. Following his completion of this program, Judge Becker returned to Idaho in April 1991. Judge Becker admitted that he resumed drinking after this inpatient treatment.

In June 1991, the Council sent Judge Becker a letter stating that the Council had determined that Judge Becker's conduct toward law enforcement personnel in December 1990 appeared to violate Canon 2(A) of the Code. The Council offered to dispose of the complaint with an informal reprimand if Judge Becker agreed to refrain from this type of conduct in the future, and if he would write letters of apology to the prosecutor and the law enforcement officers involved.

With regard to the allegation that Judge Becker had abused the use of alcohol, the Council's letter stated that the Council would hold the file open for at least one year if Judge Becker would: (1) furnish the Council with the discharge report from the inpatient treatment center, (2) do all recommended follow-up, and (3) send periodic reports from his sponsor to the Council describing Judge Becker's recovery. The Council stated that if after one year the Council received an evaluation from an independent practitioner that Judge Becker's recovery was stable, the Council would close the file with an informal admonition.

Judge Becker signed and returned a copy of the letter from the Council, stating:

I hereby acknowledge the above-described violations of the Code of Judicial Conduct and accept an informal admonition for my actions. I also acknowledge and agree that the file on the allegation of abuse of alcohol will remain open for at least one year.

Judge Becker admitted that he continued to drink after signing this acknowledgment. Within two weeks after signing the acknowledgment, Judge Becker was arrested and charged with driving while under the influence of alcohol. Judge Becker's blood alcohol content at the time of the arrest was .22 percent.

Immediately following his arrest, Judge Becker entered the Walker Center, an alcohol treatment facility in Gooding, Idaho, for a twenty-two day inpatient treatment program. During his stay at the Walker Center, this Court entered an order placing Judge Becker on administrative leave, with pay and entitlements, because of the charges pending against him. This order also required Judge Becker to refrain from performing any judicial acts, to stay away from all state court facilities unless he received specific permission from the Chief Justice, and to have no further contact with any official or court personnel of the court system, including clerical personnel, without specific permission from the administrative district judge of the Fifth Judicial District.

Following his release from the Walker Center, Judge Becker pleaded guilty to the charge of driving under the influence and received a withheld judgment and a one-year probation. The conditions of his probation required Judge Becker to: (1) pay a $750.00 fine plus $47.50 in various costs, (2) serve thirty days in jail, of which twenty-eight were suspended, (3) have his driving privileges suspended for one hundred eighty days, and (4) comply with all aftercare requirements specified in an alcohol evaluation submitted to the court by Howard Carroll, a licensed professional counselor.

During September 1991, Judge Becker contacted his court clerk by telephone four times without the permission of the administrative district judge in his district. During one of these conversations, Judge Becker told the clerk not to tell anybody about the conversation. The clerk testified that Judge Becker "said he was going to AA and therapy, but he really didn't need it. He was just doing it for the Judicial Council."

On October 1, 1991, the Council served Judge Becker with a notice of charges alleging that Judge Becker had violated Canon 2(A) of the Code by: (1) operating a motor vehicle while under the influence of alcohol, and (2) habitually abusing alcohol in 1988, 1989, 1990, and 1991. The Council specifically alleged that Judge Becker consumed alcohol during official working hours and was, or appeared to be, under the influence of alcohol while he was in his official chambers and in and around the Gooding and Jerome County courthouses.

Judge Becker answered the Council's charges, admitting that he was guilty of driving under the influence, that he was addicted to alcohol, and that the addiction became progressively worse during the latter part of 1990 and the first part of 1991. Judge Becker also alleged that he was pursuing a treatment program for his addiction.

The Council scheduled a hearing on the charges against Judge Becker for early November 1991. Approximately one week before the hearing, Judge Becker told a sheriff that he didn't believe he was weaving when he was arrested for driving under the influence, because he had driven under the influence before and knew how to do it.

At the hearing before the Council, there was testimony from other judges, law enforcement officers, and prosecuting attorneys in the Fifth Judicial District indicating that Judge Becker's problem with alcohol has tended to detract from the public's confidence in the integrity of the judiciary. Other judges in the Fifth Judicial District also testified that Judge Becker would be a good judge if he did not have a problem with alcohol. A former law clerk for Judge Becker testified that Judge Becker's use of alcohol affected his judicial performance. Judge Becker himself admitted that his

conduct had probably seriously wounded the integrity of the judiciary.

During the hearing, there was evidence concerning Judge Becker's efforts to recover from his alcohol problem, including attendance and participation in AA, aftercare at the Walker Center, and relapse prevention therapy with Howard Carroll, a counselor.

The Council found that Judge Becker had not made an adequate commitment to recovery and was still denying the extent of his alcohol problem. The Council also found that there was a high risk that Judge Becker would use and abuse alcohol in the future. The Council concluded that Judge Becker's habitual intemperance, abuse of alcohol, and driving while under the influence of alcohol had tended to detract from public confidence in the integrity of the judiciary in violation of Canon 2(A) of the Code. The Council recommended to this Court that Judge Becker be removed from office as a district judge.

Prior to the hearing before this Court, the Court determined the issues presented in this proceeding. The Court determined these issues and notified the special examiner for the Council and counsel for Judge Becker pursuant to Rule 44(e) of the Council's Rules for the Removal, Discipline or Retirement of Judges. The Court approved Rule 44 in 1969. The issues determined by the Court are:

1.  Was Judge Becker habitually intemperate?

    The Council found that Judge Becker had abused alcohol. Judge Becker has admitted that he is addicted to alcohol. Therefore, we do not believe it is necessary to address the question of whether Judge Becker abused alcohol. Judge Becker has questioned, however, whether he was habitually intemperate, as the Council also found.

2.  Did Judge Becker's conduct, including his conviction for driving under the influence, tend to detract from public confidence in the integrity of the judiciary?

    While Judge Becker correctly points out that he received a withheld judg-ment instead of a judgment of conviction, we do not believe this distinction is relevant for the purposes of determining whether his conduct tended to detract from public confidence in the integrity of the judiciary. The withheld judgment indicates that Judge Becker pleaded guilty to driving under the influence.

3.  What sanction should the Court impose on Judge Becker?

    This assumes that some sanction is necessary. Because Judge Becker's attorney proposed to the Council rather strict conditions that would accompany Judge Becker's reinstatement to his judicial duties, we have accepted that some form of sanction is necessary to deal with Judge Becker's admitted addiction to alcohol and his driving while under the influence.

4.  Does the fact that Judge Becker is an alcoholic affect what sanction the Court should impose on him?

5.  Should the Court consider any prognosis for Judge Becker's recovery from alcoholism in fashioning a sanction?

At the hearing before this Court, the Court permitted Judge Becker and his relapse prevention therapist, Howard Carroll, to testify on the limited issue of Judge Becker's progress in his alcohol recovery program since the Council's hearing in November 1991. The testimony of Judge Becker and Howard Carroll indicated that Judge Becker had progressed in his recovery from alcohol addiction and that he had remained sober since his arrest for driving under the influence in July 1991. This testimony also indicated that Judge Becker still has much to do to overcome his addiction.

II.

THE PROCEDURES AND STANDARDS.

This is the first occasion the Court has had to address the procedures and standards the Court follows in considering the discipline, removal, or retirement of a judge since the enactment of I.C. § 1–2103

in 1967 and the ratification of art. 5, § 28 of the Idaho Constitution in 1968. *Cf. Pittam v. Maynard,* 103 Idaho 177, 179, 646 P.2d 419, 421 (1982) (discussing the implicit repeal of I.C. § 19–4115—the procedure for removal of civil officers—insofar as this statute relates to district judges, by the adoption of art. 5, § 28, Idaho Const., and enactment of ch. 21, Title 1, I.C.).

Art. 5, § 28 states: "Provisions for the retirement, discipline and removal from office of justices and judges shall be as provided by law."

I.C. § 1–2103 provides:

**Removal, disciplining, or retirement of judges or justices—Procedure [Effective until July 1, 1993].**—A justice of the Supreme Court or judge of any district court, in accordance with the procedure prescribed in this section, may be disciplined or removed for wilful misconduct in office or wilful and persistent failure to perform his [or her] duties or habitual intemperance or conduct prejudicial to the administration of justice that brings judicial office into disrepute, or he [or she] may be retired for disability seriously interfering with the performance of his [or her] duties, which is, or is likely to become of a permanent character. The judicial council may, after such investigation as the council deems necessary, order a hearing to be held before it concerning the removal, discipline or retirement of a justice or a judge, or the council may in its discretion request the Supreme Court to appoint three (3) special masters, who shall be justices or judges, to hear and take evidence in any such matters, and to report their findings to the council. If, after hearing, or after considering the record and the findings and report of the masters, the council finds good cause therefor, it shall recommend to the Supreme Court the removal, discipline or retirement, as the case may be, of the justice or judge.

The Supreme Court shall review the record of the proceedings on the law and facts and in its discretion may permit the introduction of additional evidence and shall order removal, discipline or retirement, as it finds just and proper, or wholly reject the recommendation. Upon an order for retirement, the justice or judge shall thereby be retired with the same rights and privileges as if he [or she] retired pursuant to other provisions of law. Upon an order for removal, the justice or judge shall thereby be removed from office, and his [or her] salary shall cease from the date of such order.

All papers filed with and the proceedings before the judicial council or masters appointed by the Supreme Court, pursuant to this section, shall be confidential, provided, however, that if allegations against a judge are made public by the complainant, judge or third persons, the judicial council may, in its discretion, comment on the existence, nature, and status of any investigation. The filing of papers with and the giving of testimony before the council or the masters shall be privileged; but no other publication of such papers or proceedings shall be privileged in any action for defamation except that (a) the record filed by the council in the Supreme Court continues privileged and upon such filing loses its confidential character and (b) a writing which was privileged prior to its filing with the council or the masters does not lose such privilege by such filing. The judicial council shall by rule provide for procedures under this section, including the exercise of requisite process and subpoena powers. A justice or judge who is a member of the council or Supreme Court shall not participate in any proceedings involving his [or her] own removal, discipline or retirement.

This section is alternative to, and cumulative with, the removal of justices and judges by impeachment, and the original supervisory control of members of the judicial system by the Supreme Court.

The last sentence of I.C. § 1–2103 acknowledges that the Court has original supervisory control of judges. This authority arises by virtue of the judicial power that is vested in the Court by art. 5, § 2 of the Idaho Constitution. ("The courts shall constitute a unified and integrated judicial sys-

tem for administration and supervision by the Supreme Court.") Art. 5, § 13 of our constitution prohibits the legislature from depriving the Court of this supervisory power. ("The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; ....")

As we view the intent and meaning of I.C. § 1–2103 in light of the ultimate authority of the Court, the statute provides the means by which the Council may initiate investigations of judicial conduct and make recommendations to the Court for discipline, removal, or disability retirement of judges. As the statute itself recognizes, the Court has the final authority to accept or reject the recommendation. The statute recognizes that the Court has the discretion to "order removal, discipline or retirement, as it finds just and proper." While the Council fills an important role in the process for considering the discipline, removal, or retirement of judges, this Court has the ultimate authority and responsibility to decide what should be done in each case based on our weighing of the evidence presented to the Council and any additional evidence the Court permits.

In assessing the evidence presented in this proceeding, we apply a clear and convincing burden of proof standard. *Cf. Matter of Jenkins*, 120 Idaho 379, 384, 816 P.2d 335, 340 (1991) (applying clear and convincing burden of proof standard in attorney disbarment and disciplinary actions). Both the Council and Judge Becker have agreed that this is the correct standard, and we concur.

## III.

## THE VIOLATION OF CANON 2(A).

In 1976, the Court adopted the Idaho Code of Judicial Conduct "to guide and govern the conduct of judges at all levels of the judicial system in the State of Idaho." Canon 2(A) of the Code states:

A judge should respect and comply with the law and should conduct himself [or herself] at all times in a manner that

does not detract from public confidence in the integrity and impartiality of the judiciary.

In addition to Judge Becker's admitted addiction to alcohol and his driving while under the influence, the evidence is clear and convincing that Judge Becker has been habitually intemperate. The Council addressed the question of whether Judge Becker was habitually intemperate because of the provisions of I.C. § 1–2103. ("A justice of the Supreme Court or judge of any district court ... may be disciplined or removed for ... habitual intemperance....") Judge Becker's counsel has questioned whether this term is too vague for us to apply.

In the context of divorce cases, the legislature has defined "habitual intemperance" as "that degree of intemperance from the use of intoxicating drinks which disqualifies the person a great portion of the time from properly attending to business,...." I.C. § 32–608. Interpreting this statutory definition in *De Cloedt v. De Cloedt*, 24 Idaho 277, 133 P. 664 (1913), the Court stated that habitual intemperance "does not mean that a person would have to be drunk all the time, neither does it provide that [the person] shall be incapacitated from pursuing [the person's] usual labors during any particular hours, or any time, but does mean one who has a fixed habit of frequently getting drunk,.... It is sufficient that [the person] have the habit and that the habit is firmly fixed upon [the person]; that [the person] gets drunk with recurring frequency periodically, or that [the person] is unable to resist when opportunity and temptation is presented." *Id.* at 285, 133 P. at 666. The evidence demonstrates clearly and convincingly that Judge Becker was habitually intemperate during at least the latter part of 1990 and the early part of 1991.

After an independent review of the evidence presented to the Council, we find clear and convincing proof that Judge Becker's habitual intemperance, abuse of alcohol, and driving under the influence has detracted from public confidence in the integrity of the judiciary. This was con-

firmed by the testimony of other judges in the Fifth Judicial District, as well as law enforcement officers and two prosecutors. Even Judge Becker admitted that his alcohol-related conduct probably seriously wounded the integrity of the judiciary.

## IV.

### THE JUST AND PROPER SANCTION.

■ After carefully considering the evidence presented to the Council and the additional evidence presented to the Court, we conclude that Judge Becker's removal is not the just and proper sanction in this case.

We have carefully studied the evidence presented to the Council, as well as the additional evidence presented to the Court. We have also carefully considered the recommendation of the Council. We are convinced that while Judge Becker's conduct detracted from the integrity of the judiciary, Judge Becker's addiction to alcohol, which has been the source of his misconduct, is a disease. It is a disease that cannot be cured, but it is a disease that can be treated and controlled.

The evidence before us convinces us that we must severely sanction Judge Becker to demonstrate that this Court places the integrity of the judiciary foremost among its concerns in exercising supervisory control of judges. We are also convinced that Judge Becker's removal would deprive the judicial system of an experienced judge who was elected by the voters in the Fifth Judicial District, and someone who can be a good judge if he can control his addiction to alcohol.

We believe it is just and proper, however, that our action include conditions that will assist Judge Becker in avoiding a relapse in his efforts to control his alcoholism and remain sober.

In this spirit, we suspend Judge Becker from his duties as a district judge, without salary, for a period of three months. During the suspension and the balance of his current term in office, Judge Becker shall comply with the following conditions:

1. Judge Becker shall not consume any alcohol.
2. Judge Becker shall submit himself to periodic blood tests, at his own expense, to determine whether he has consumed any alcohol. These blood tests shall be performed by a physician designated by the Court. Judge Becker shall report to this physician four times each week on a schedule established by the physician. The physician may require Judge Becker to submit to a blood test on each of these occasions, or on only selected occasions. In any event, the physician shall require Judge Becker to submit to a blood test at least once each week, and shall randomly vary the occasions when Judge Becker is tested. Immediately following each blood test, the physician shall give the Court written notice, signed by the physician, stating whether the blood test indicates that Judge Becker has consumed any alcohol.
3. Judge Becker shall attend and participate in at least two Alcoholics Anonymous sessions each week. Each month Judge Becker shall provide the Court written verification, signed by the chairperson or secretary of each session, of his attendance and participation in these sessions.
4. Judge Becker shall attend and participate in relapse prevention therapy with Howard Carroll, or another counselor who is at least as well qualified, at least once each week. Each month Judge Becker shall provide the Court written verification from the counselor of his attendance and participation in this therapy.
5. Judge Becker shall attend and participate in the aftercare program at the Walker Center once a week. Each month Judge Becker shall provide the Court written verification from the Walker Center of his attendance and participation in this program.

If, by means of any blood test administered pursuant to condition 2 above or by any other reliable means, Judge Becker is determined by the Court to have consumed any alcohol, the Court shall immediately

order his removal from office, without further proceedings before the Council or this Court. If Judge Becker fails, without good cause, to comply with conditions 2, 3, 4, or 5 above, the Court may immediately order his removal from office without further proceedings before the Council or this Court.

· IT IS SO ORDERED.

BISTLINE, J., and WALTERS and TROUT, JJ., Pro Tem., concur.

McDEVITT, Justice, dissenting:

The gravamen of this proceeding is not a DUI charge or conviction, it is a knowing and willful violation of an order of this Court.

Judge Becker contacted a witness to the Judicial Council disciplinary proceedings and attempted to change or alter that person's testimony. This action by him strikes at the heart of our system. Removal is the only appropriate sanction.

Therefore, I dissent and *permitte divis cetera.*

## ON DENIAL OF MOTION FOR LEAVE TO PRODUCE ADDITIONAL EVIDENCE AND PETITION FOR REHEARING

JOHNSON, Justice.

The Council has filed a motion for leave to produce additional evidence and a petition for rehearing.

## THE MOTION FOR LEAVE TO PRODUCE ADDITIONAL EVIDENCE.

The motion requests leave to present the "new and additional testimony" of a witness "upon the grounds and for the reason that such testimony is critical to a proper determination of the issues in this action and was not known nor available to [the Council] until after this Court took testimony on April 14, 1992, regarding Judge Becker's alcohol recovery progress." The Council supports its motion with the affidavit of Gregory Shipman dated May 13, 1992. Shipman is the court reporter for

District Judge James J. May of the Fifth Judicial District. Judge May is a member of the Council, but recused himself from the proceedings before the Council concerning Judge Becker. Judge Becker has objected to the introduction of this new evidence by the Council and has proposed to offer rebuttal evidence if the new evidence is permitted.

We first point out, as we did in our initial opinion, that the Court's authority in this proceeding derives from the Court's original supervisory control of judges vested in the Court by art. 5, § 2 of our state constitution. This is not an appeal from the Council. This Court has the ultimate authority and responsibility to decide what should be done in each case based on our weighing of the evidence presented to the Council and any additional evidence the Court permits.

As our initial opinion indicates, at the hearing before this Court, the Court permitted Judge Becker and his relapse prevention therapist to testify on the limited issue of Judge Becker's progress in his alcohol recovery program since the Council's hearing in November 1991. Although the Court invited the special examiner for the Council to present rebuttal evidence, the special examiner said he had none to offer.

This Court has consistently adhered to the rule that when a party seeks a new trial based on newly discovered evidence, "it is essential ... that such evidence has been discovered since the trial and that it could not have been discovered before or during the progress of the trial by the exercise of due diligence." *Fredericksen v. Luthy,* 72 Idaho 164, 168, 238 P.2d 430, 432 (1951); *cf.* I.R.C.P. 59(a)(4) (A new trial may be granted based on "[n]ewly discovered evidence, material for the party making the application, which [the party] could not, with reasonable diligence, have discovered and produced at the trial.") The party seeking a new trial on the grounds of newly discovered evidence bears the burden of establishing that the party could not have discovered the evidence before the trial by the exercise of due diligence. *Grasser v.*

*First Security Bank of Idaho,* 96 Idaho 754, 757, 536 P.2d 749, 752 (1975).

Although neither the prior decisions of this Court nor the rules promulgated by the Court concerning new trial motions govern this proceeding, we believe the principles embodied in our decisions and rules are appropriate to apply in this situation. Here, there is no showing that by the exercise of due diligence prior to this Court's hearing on April 14, 1992, the Special Examiner for the Council could not have discovered the new evidence the Council wishes to present. Therefore, we deny the motion for leave to produce additional evidence.

THE PETITION FOR REHEARING.

The Council filed its petition for rehearing pursuant to Rule 42 of the Idaho Appellate Rules. We first point out that because this is not an appeal, Rule 42 does not technically apply in this proceeding. We do, however, have inherent authority to consider the petition as a request for reconsideration of our decision.

Before issuing our initial opinion in this proceeding, we considered all of the issues the Council raises in the brief in support of its petition, except the request to present additional evidence, which we deny above. After reviewing the other issues presented in the Council's brief, we are not convinced to reconsider our decision. Therefore, we deny the petition.

IT IS SO ORDERED.

BISTLINE and McDEVITT, JJ. and WALTERS and TROUT, JJ. Pro Tem., concur.