# IN THE SUPREME COURT OF IOWA

No. 14–0510

Filed September 12, 2014
Amended December 11, 2014

**IN THE MATTER OF EMILY SUSAN DEAN,**

District Associate Court Judge.

On application of the Iowa Commission on Judicial Qualifications.

State commission on judicial qualifications filed application recommending three-month suspension of district associate judge. **APPLICATION GRANTED; JUDICIAL OFFICER SUSPENDED.**

Thomas J. Miller, Attorney General, and Grant K. Dugdale and Kevin R. Cmelik, Assistant Attorneys General, for complainant.

Elaine F. Gray of Fehseke & Gray Law Offices, Fort Madison, for respondent.

**APPEL, Justice.**

In this case, we consider a recommendation by the Iowa Commission on Judicial Qualifications (the Commission) to suspend a district associate judge for three months as a result of behavior related to alcohol consumption. The gravamen of the original complaint that triggered commencement of the proceeding was a report that the judge arrived at a courthouse in an intoxicated state and could not perform her scheduled judicial duties. For the reasons expressed below, we conclude that a suspension without pay should be imposed, but limit the suspension to thirty days.

## I. Factual and Procedural Background.

**A. The Precipitating Incident.** On May 9, 2012, the Commission received a complaint from a district court judge regarding District Associate Judge Emily Dean. The precipitating incident that gave rise to the complaint was the arrival of Judge Dean at the Henry County Courthouse that morning where she was said to be physically unable to take the bench. The complaint indicated reports that Judge Dean had been consuming alcohol prior to her arrival at the courthouse. The complaint also recited a history of Judge Dean's absence from work for health-related reasons presumed to be alcohol related. On May 10, the Commission entered an order suspending Judge Dean from her judicial duties pending investigation and action on the complaint.

**B. Attorney General's Report to the Commission.** The attorney general's office conducted an investigation of the facts alleged in the complaint and issued a report, which was admitted as State's Exhibit 1 at the hearing. With respect to the incident on May 9, the attorney general's report indicated that Judge Dean had been drinking a colorless liquid and fell asleep in the car while being driven by her court reporter

from Fort Madison to Mount Pleasant. Upon arriving at the courthouse, Judge Dean swayed and was unsteady. Her court reporter recognized that she was not in a condition to take the bench and obtained assistance from an employee in the county attorney's office to persuade Judge Dean not to take the bench and to leave the courthouse. Her court reporter drove her back to Fort Madison and contacted a family member. Later that day, she was hospitalized for severe alcohol intoxication. She remained in the hospital for three days. The attorney general's office interviewed the witnesses with firsthand knowledge of the incident. There was no suggestion in the report of inappropriate conduct on the part of Judge Dean on May 9, beyond her arrival at the courthouse in a state of intoxication.

In a letter to the attorney general's office submitted pursuant to the investigation, Judge Dean began by admitting that she is an alcoholic and generally recounted her struggle with the disease, stating she initially addressed the problem locally through weekly substance abuse counseling and additional mental health counseling. She suffered a grand mal seizure in November 2011 as a result of alcohol withdrawal and participated in inpatient alcohol treatment at Hazelden in Center City, Minnesota, in December 2011. She stated that she attended a second inpatient treatment program at The Abbey in Bettendorf, Iowa, in April 2012. Upon further inquiry by the attorney general's investigator, however, Judge Dean admitted that she left both programs shortly before completion.

Judge Dean did not contest the basic facts surrounding the May 9 incident, although she stated she had "very little recollection of that morning." After leaving the courthouse, Judge Dean stated that her family took her to Great River Medical Center's emergency unit, where

she was admitted into the intensive care unit. She remained hospitalized for three days. She characterized the May 9 event as "hitting bottom" in her struggle with alcoholism.

The report also noted other incidents of alcohol-related conduct. An assistant county attorney stated that in February and March of 2012, there were occasions when Judge Dean appeared "disoriented" and "disheveled." Additionally, the report described an incident in Fort Madison in which lawyers and litigants were assembled in the courtroom. According to the report, Judge Dean took the bench and stated, "Why are all of you here?" The report stated Judge Dean's court reporter called Judge Dean's father who arrived and escorted her from the courthouse.

The report further described other events. Judge Dean apparently decided to test a "panic button" to see if law enforcement would respond, which they did. Additionally, in May of 2012 a citizen filed a complaint alleging that a female driving Judge Dean's husband's car had urinated in a public street. The citizen followed the car to a destination that fit the description of Judge Dean's mother's residence. Judge Dean admitted she knew of the allegation, but could not remember what happened and could not deny it. No charges were filed.

The report also canvassed Judge Dean's recovery efforts after May 9. According to Hugh Grady of the Iowa Lawyers Assistance Program (ILAP), Judge Dean had made excellent progress in a twelve-step program. Judge Dean had also signed a contract to abide by all conditions imposed by ILAP, including monitoring by Mr. Grady, regular attendance at meetings with a sobriety support group, and preparation of a relapse plan. Mr. Grady and professionals at Great River Addiction

Services did not recommend another round of inpatient treatment for Judge Dean.

**C. Charges Brought by the Commission.** After the attorney general's investigation and subsequent report, the Commission filed a notice of charges against Judge Dean and set the matter for hearing. In the notice of charges, the Commission alleged that Judge Dean violated canon one and canon two of the Iowa Code of Judicial Conduct, including rule 51:1.2 and rule 51:2.5(A). *See* Iowa Code of Judicial Conduct Canons 1, 2; *id.* rs. 51:1.2, 51:2.5(A). First, the Commission charged that by appearing at the Henry County Courthouse while intoxicated, Judge Dean failed to avoid impropriety, raised doubt about her integrity, and eroded confidence in the judiciary. As a result, the Commission alleged a violation of rule 51:1.2, which requires judges to promote confidence in the judiciary. *See* Iowa Code of Judicial Conduct R. 51:1.2. Second, the Commission charged that by being intoxicated and unable to handle assigned cases on one or more occasions, Judge Dean failed to demonstrate the competence and diligence required in the performance of judicial duties. As a result, the Commission alleged a violation of rule 51:2.5(A), relating to the competence, diligence, and cooperation of a judge. *See id.* r. 51:2.5(A).

Judge Dean filed an answer admitting the charges. Although Judge Dean admitted to the charges, it is our duty to review the findings of the Commission de novo and evaluate the facts to determine if a violation occurred. *See In re Meldrum*, 834 N.W.2d 650, 652 (Iowa 2013); *cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 804 (Iowa 2010) ("Our rules require us to determine whether [the] conduct violates our ethical rules."). In doing so, we look to both attorney and judicial disciplinary cases and note that principles in

attorney disciplinary matters are generally applicable to judicial disciplinary matters. *See In re McCormick*, 639 N.W.2d 12, 18 (Iowa 2002) (observing sanctions related to attorney misconduct should be comparable in judicial disciplinary proceedings).

**D. Hearing Before the Commission.** The Commission held its hearing on October 31, 2012. At the hearing, the State rested on the admissions by Judge Dean that she had violated the rules of judicial conduct. Later in the proceeding, however, in addition to the attorney general's report, the State offered into evidence medical records related to Judge Dean's efforts to address her alcoholism.

Judge Dean put on testimony from alcohol counselors and her husband. James Towlerton, a substance-abuse counselor at Great River Addiction Services, testified Judge Dean had made excellent progress in dealing with her alcoholism since the May 9 incident. Mr. Towlerton noted Judge Dean had "totally involved herself" in Alcoholics Anonymous (AA) and attended two meetings a day the majority of time since May 9. Mr. Grady testified that contrary to her efforts prior to May 9, Judge Dean was now "fully invested in recovery" with "a completely different commitment" to a recovery program. Her husband testified about the long and painful family history of frustration and broken promises related to Judge Dean's alcoholic behavior, followed by "a complete 180 degree turn" after May 9.

Judge Dean also testified. She recounted the course of her alcoholism and her unsuccessful past efforts to address it. She generally asserted that other than the occasion on May 9, she did not come to work intoxicated. She admitted that she lost her zest for the job and that she quit doing any more than was necessary, but she asserted she handled her workload in a timely manner. With respect to the citizen

report that she urinated in public, she had limited memory of the event and could neither affirm nor deny what happened. She denied any improper or alcohol-affected conduct in connection with testing the panic button, though she admitted law enforcement was not pleased by her experiment. Judge Dean stated she had no recollection of the assistant county attorney's report of an occasion when she was confused by the presence of lawyers and litigants in the courtroom.

Notwithstanding failed past efforts to deal with her alcoholic behaviors, Judge Dean testified that since May 9, AA has become the center of her life. She now recognizes she is an alcoholic and she cannot allow herself to drink. In light of her path to recovery, Judge Dean declared she was desperately ready to go back to work. She recognized her conduct "tarnished the reputation" of the judicial branch, but suggested her experience would give her insight into her work as a judge.

At the hearing, a monitoring agreement between Judge Dean and the ILAP was introduced into evidence. Under the terms of the monitoring agreement, Judge Dean, among other things, agreed to remain abstinent from alcohol and mood altering drugs, to attend a minimum of five AA meetings per week, to find and use a sponsor, to meet with Mr. Grady and Mr. Towlerton on a regular basis, to provide random urine samples upon request, and to provide proof of compliance to the ILAP on a quarterly basis. The monitoring agreement further provided that any noncompliance would be reported to the Commission.

Mr. Grady called the monitoring agreement "the key" or, more ominously, "the hammer." Judge Dean testified she was in full agreement with all of the provisions of the monitoring agreement. She stated, "I can't do my job appropriately if I'm actively using alcohol."

On the issue of sanction, the State indicated that a private admonition would probably do as much as anything for Judge Dean, but the public and the profession needed to know the matter was being taken seriously. Therefore, the State urged at the very least a public reprimand. The State further recommended the sanction of removal from office or a suspension without pay stayed pending Judge Dean's continued sobriety and compliance with the monitoring agreement with the ILAP.

Judge Dean noted she had already been off work seeking rehabilitation for five months. She was prepared to live with any sanction the Commission proposed and noted that having the hammer was probably a "good idea." She primarily wanted to go back to work.

### E. Commission Rulings.

1. *Reinstatement order.* On November 2, 2012, the Commission entered an order reinstating Judge Dean to her judicial duties. The reinstatement order, however, incorporated in substance the terms of the monitoring agreement introduced into evidence at the hearing. The reinstatement order provided that Mr. Grady or his designee shall immediately report to the Commission any failure to meet the requirements of the monitoring agreement. Upon such a report, the Commission would determine an appropriate response depending upon the nature of the failure. The monitoring agreement was to remain in effect for two years from the date of the order.

2. *Application to discipline a judicial officer.* On March 27, 2014, the Commission filed an application with this court to discipline a judicial officer pursuant to Iowa Code section 602.2106 (2011). The Commission entered findings of fact, noting among other things that prior to May 9, 2012, Judge Dean wrestled with alcoholism and at times

appeared in court disoriented and disheveled. The Commission also found that Judge Dean relieved herself on a public street while under the influence of alcohol. The Commission further found that on May 9, 2012, Judge Dean arrived at the Henry County Courthouse in an intoxicated state and, through the intervention of staff, was persuaded to leave rather than take the bench. The Commission noted Judge Dean acknowledged, and the Commission found, that Judge Dean violated canon one and canon two of the Iowa Code of Judicial Conduct, including rule 51:1.2 and rule 51:2.5(A).

The Commission noted that while alcoholism is an illness, there remained the issue of an appropriate sanction for Judge Dean's improper conduct. The Commission recognized the challenging nature of the task when alcoholism causes an otherwise competent and diligent jurist to violate her professional responsibilities. While the Commission applauded Judge Dean's so far successful effort to control her alcohol use since May 9, the Commission believed that in determining the appropriate sanction, restoring public confidence in the judicial system and deterring other judges from engaging in similar unethical conduct were the main purposes of judicial discipline. The Commission noted that while a lesser sanction might be appropriate for a single incident of alcohol-induced behavior outside the courthouse, Judge Dean appeared intoxicated on the bench, in the courthouse, and in public.

The Commission recommended that Judge Dean be suspended for three months without pay. Because of potential disruption to the Eighth Judicial District that would result from a three-month suspension, the Commission recommended the suspension be imposed in increments of no less than one week at a time, as scheduled by the chief judge of the district. The Commission further emphasized that during the period of

suspension, Judge Dean should continue to comply with the monitoring agreement described in the Commission's order for reinstatement.

## II. Scope of Review.

"Our standard of review of a recommendation of judicial discipline by the commission on judicial qualifications is de novo." *In re McCormick*, 639 N.W.2d at 15. The ethical violation of a judge must be established by a convincing preponderance of the evidence. *In re Block*, 816 N.W.2d 362, 364 (Iowa 2012).

## III. Discussion.

**A. Violations of Judicial Ethics.** In this case, the Commission charged, and Judge Dean has admitted, violation of rules 51:1.2 and 51:2.5(A). Rule 51:1.2 states that "[a] judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Iowa Code of Judicial Conduct R. 51:1.2. Rule 51:2.5(A) provides that "[a] judge shall perform judicial and administrative duties competently and diligently." *Id.* r. 51:2.5(A). In order to sanction a judge, a violation of the rules must be "substantial." Iowa Code § 602.2106(3)(*b*).

Like the Commission and Judge Dean, we find there is ample evidence to support these charges. There can be little dispute that the appearance of a judge in an intoxicated state at the courthouse unable to perform scheduled judicial duties violates both rules. On that day, Judge Dean did not promote public confidence in the independence, integrity, and impartiality of the judiciary and did not perform her duties competently or diligently.

In finding the violations, we do not base them upon Judge Dean's mere status as an alcoholic, but rather on her conduct. The purpose of

judicial disciplinary proceedings is "to restore public confidence in the judicial system and its judges," as well as deter future misconduct, not to punish an individual judge. *In re Meldrum*, 834 N.W.2d at 653–54; *In re Block*, 816 N.W.2d at 365. Thus, any disciplinary sanction we may impose, as a result of the violations in this case, arises not as a result of Judge Dean's status as an alcoholic, but rather because of the effect of her conduct on public confidence in the judicial branch and the need to deter future similar misconduct.

**B. Sanctions.** Discipline may be imposed for a substantial violation of the canons of judicial ethics. Iowa Code § 602.2106(3)(*b*); *In re Block*, 816 N.W.2d at 364–65. In determining a suitable sanction, we look to the goals of discipline and the entire record, considering both mitigating and aggravating factors, including related misconduct stemming from the judge's alcoholism. *See In re Block*, 816 N.W.2d at 365–66; *cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marzen*, 779 N.W.2d 757, 765 (Iowa 2010) (noting even if the evidence failed to establish an alleged charge, that evidence could constitute an aggravating factor to support a more severe sanction). We must be satisfied that there is a sufficient nexus between the other related incidents in the record and the larger goals of judicial discipline in imposing a proper sanction.

Initially, we note that in two cases we have imposed public reprimands on judges who committed a first offense of driving a motor vehicle while intoxicated. *In re Block*, 816 N.W.2d at 363; *In re Weaver*, 691 N.W.2d 725, 725 (Iowa 2004). An argument can be made that this case is similar to the drunk-driving cases. The drunk-driving cases, however, did not involve intoxication of a judge when reporting for judicial duties at the courthouse but instead represented discrete and

uncharacteristic private events. We think the appearance of a judge in a state of intoxication at the courthouse has an obvious direct linkage to the performance of judicial duties and to public respect for the integrity of the judicial process. Further, the record in this case shows additional improper conduct related to alcohol consumption. The drunk-driving cases do not provide us with much guidance here.

Other jurisdictions have dealt with alcohol-related misconduct by judges. In *In re Krake*, 942 So. 2d 18, 20–28 (La. 2006), a judge was suspended for six months due to appearing intoxicated at public and bar events, appearing hung over on the bench, and requiring several leaves of absences from the bench to obtain treatment. The judge was later suspended for the balance of his term as a result of failure to abide with ongoing monitoring requirements. *In re Krake*, 976 So. 2d 162, 163–64 (La. 2008).

Another case involving judicial misconduct arising from alcoholism is *Idaho Judicial Council v. Becker*, 834 P.2d 290 (Idaho 1992). In this case, the Idaho Supreme Court found that a judge's habitual intemperance, abuse of alcohol, and conviction for driving under the influence detracted from public confidence in the integrity of the judiciary and warranted a three-month suspension. *Id.* at 290. In imposing its sanction, the Idaho court stressed the importance of maintaining the integrity of the judiciary. *Id.* at 293.

There is some caselaw from other states imposing more lenient sanctions than *Krake* and *Becker*. In *In re Kirby*, 354 N.W.2d 410, 421 (Minn. 1984), the Minnesota Supreme Court found that discourteous treatment of female attorneys, public intoxication, conducting judicial business with alcohol on his breath, and habitual tardiness warranted a public censure. The *Kirby* court noted there was only one instance in

which Judge Kirby was intoxicated while performing judicial duties and there was no showing the use of alcohol had an effect on any of his decisions. *Id.* at 417. The Minnesota Court recognized, however, the importance of "the perception of the public upon the administration of justice in general and upon the over 200 other judges in this state in particular." *Id.*

On balance, we think the conduct demonstrated by the record in this case requires a suspension. The public cannot accept, the bar cannot condone, and we cannot tolerate judges showing up for work intoxicated. In addition, Judge Dean's alcohol consumption casts a shadow across her discretionary decision-making, even if she was not specifically intoxicated when in court and even if her discretionary decisions were timely made and not subject to reversal on appeal.

We consider both aggravating and mitigating factors in determining an appropriate sanction. *In re Block*, 816 N.W.2d at 365–66 (listing ten factors we generally consider in determining an appropriate sanction in each case); *In re McCormick*, 639 N.W.2d at 16 (same). In this case, there are aggravating factors. There are reports in the attorney general's investigation, which we find credible, that Judge Dean was occasionally disoriented and disheveled. While the evidence related to Judge Dean relieving herself in public is an anonymous police report and therefore problematic, we do not find Judge Dean's asserted lack of memory comforting. Ordinarily, such a remarkable charge would be met with a quick and firm denial. It is apparent that Judge Dean had consumed alcohol in sufficient quantities that she could not sufficiently remember the nature of her conduct to deny the charge of highly unusual conduct. *See In re Block*, 816 N.W.2d at 365 (noting factors include "whether the

misconduct is isolated or a pattern of misconduct" and "the nature, extent, and frequency of the acts of misconduct").

But there are also important mitigating factors. There have been no prior complaints regarding Judge Dean. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 527 (Iowa 2012) (noting, in attorney disciplinary case, that the "lack of a prior disciplinary record is an important mitigating factor"). While the misconduct was severe on May 9 and obviously disrupted the judicial system, Judge Dean did not assume the bench and preside over cases. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 110 (Iowa 2012) (noting lack of harm to third parties is significant mitigating factor in attorney disciplinary case). The State at the hearing emphasized that Judge Dean had fully cooperated with the Commission in the investigation of this matter. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 103 (Iowa 2010) (noting cooperation with attorney disciplinary authorities as mitigating factor).

Our cases, however, hold that while alcoholism is no legal justification, excuse, or defense for unethical conduct, the recognition of alcoholism and rehabilitative efforts can be a mitigating factor in disciplinary proceedings. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 660–61 (Iowa 2013) (canvassing attorney disciplinary cases); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Roush*, 827 N.W.2d 711, 719 (Iowa 2013).

We recognize that Judge Dean was not working while she sought rehabilitation between May and November of 2012. This absence is not a substitute for the sanction of suspension in this case. Absence due to rehabilitation and disciplinary sanctions serve overlapping, but distinct, purposes. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Maxwell*, 705

N.W.2d 477, 480 (Iowa 2005). Absence from duty due to rehabilitation does not "specifically address unethical conduct and the need to deter future conduct." *Id.* Further, a rehabilitative absence for judicial officers occurs with pay rather than without pay. By contrast, lawyers are not permitted to earn fees while under disability suspension. *See* Iowa R. Prof'l Conduct 35.17(5) ("No attorney suspended due to disability under this rule may engage in the practice of law in this state until reinstated by order of the supreme court."). Nonetheless, absence for the purpose of rehabilitation, like disability suspensions for attorneys, may be considered a mitigating factor in determining the length and adequacy of a disciplinary suspension. *Cf. Clarity*, 838 N.W.2d at 662–63; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson,* 838 N.W.2d 528, 543–44 (Iowa 2013).

The record in this case establishes that after a substantial period of difficult and painful struggle with alcoholism, Judge Dean has confronted her disease and now has demonstrated a deep personal commitment to recovery. She appears to have overcome the denial, recovered from the embarrassment, recognized the depth of the problem of alcohol dependence, and most importantly has been able to establish the kind of supportive framework associated with successful recovery over a lifetime. It has not been an easy road for her and will not always be an easy road in the future. But, the fact Judge Dean has chosen to commit herself to a disciplined program of recovery is a significant mitigating factor and offers her the potential of a continued successful judicial career. Indeed, our state is no stranger to recovering alcoholics who have performed outstanding judicial service after successfully confronting the disease.

We note that Judge Dean and the ILAP have agreed to a monitoring agreement that was in substance incorporated into the Commission's order for reinstatement. The monitoring agreement was to remain in effect for two years from the date of the order, which time period has nearly elapsed. We regard the monitoring agreement as an agreement involving Judge Dean, the ILAP, and the Commission. We do not regard the monitoring agreement as a formal sanction that requires our review on this application. The parties agreed in the event that Judge Dean fails to meet her obligations under the recovery monitoring agreement, the Commission will be notified and additional sanctions will be considered based upon the facts and circumstances of the violation. We do believe, however, that the presence of this voluntary monitoring agreement, and Judge Dean's successful compliance with it, provides us with additional confidence that the public will be adequately protected by the sanction we impose here today.

Based upon the facts and circumstances of this case, we conclude that in order to protect the integrity of and respect for the judiciary, the application of the Commission should be granted and a thirty-day suspension without pay should be imposed upon Judge Dean. Judge Dean is entitled to no compensation during the course of the disciplinary suspension, except for fringe benefits. In order to allow for the orderly transition of judicial business, the suspension shall take effect seven days after the entry of this opinion.

## IV. Conclusion.

For the above reasons, we grant the application and hold that Judge Dean should be suspended from her judicial position for a period of thirty days without pay, except for fringe benefits. The suspension shall commence on September 20, 2014.

**APPLICATION GRANTED; JUDICIAL OFFICER SUSPENDED.**