# IN THE SUPREME COURT OF IOWA

No. 15–2008

Filed April 8, 2016

Amended June 21, 2016

**IN THE MATTER OF THE INQUIRY CONCERNING JOSEPH SEVCIK,** Judicial Magistrate, First Judicial District.

---

On application of the Iowa Commission on Judicial Qualifications.

Commission on judicial qualifications filed application to discipline part-time judicial magistrate for misuse of expunged court files. **APPLICATION GRANTED; JUDICIAL OFFICER REPRIMANDED.**

Thomas J. Miller, Attorney General, and Kevin Cmelik and Grant Dugdale, Assistant Attorneys General, for complainant.

Joseph R. Sevcik, Cedar Falls, pro se.

**CADY, Chief Justice.**

The Iowa Commission on Judicial Qualifications filed an application for imposition of discipline against a part-time judicial magistrate for misuse of expunged files. The Commission found the magistrate violated the Iowa Code of Judicial Conduct and recommended he be publicly reprimanded. We grant the application and agree on our review that the appropriate sanction for the magistrate's conduct is a public reprimand.

## I. Factual and Procedural Background.

Joseph Sevcik has served as a part-time magistrate in Black Hawk County for nearly ten years. He has also practiced law in Iowa for more than twenty-five years and maintains a law office in Cedar Falls. We have never disciplined Magistrate Sevcik as a judicial officer or as an attorney.

On November 5, 2013, Magistrate Sevcik, acting in his capacity as a private attorney, represented a client in district court for a hearing on a motion for temporary placement of a child. Prior to the hearing, he retrieved four criminal and six domestic abuse court files from the office of the clerk of court. He had notified the clerk of court in advance that he wanted the files and intended to ask the judge to take judicial notice of the contents of the files during the course of the hearing. Magistrate Sevcik was uncertain whether he was on duty as a magistrate when he requested the files, but was not on duty when he retrieved them from the clerk's office. He knew two of the criminal files included deferred judgments and had been expunged. These files were marked as expunged. He understood the expunged files contained confidential documents and were only available to specific persons and agencies, including magistrates. Iowa Code §§ 907.4(2), .9(4)(*b*) (2013). Magistrate

Sevcik believed the district judge presiding over the hearing could take judicial notice of all the files, and he requested such judicial notice during the hearing, placing them on the courtroom bench. In addition, Magistrate Sevcik used a document from one of the expunged files to impeach a witness during the hearing.

The Commission found Magistrate Sevcik violated two of the canons of judicial conduct with his actions. Specifically, the Commission pinpointed rules 51:1.1, compliance with the law; 51:1.2, promote independence, integrity, and impartiality of the judiciary while avoiding impropriety; 51:1.3, abuse of judicial office to advance personal or economic interests of the judge or others; and 51:3.5, intentional use of nonpublic information for a purpose unrelated to judicial duties.

The Commission recommended Magistrate Sevcik be publicly reprimanded. It relied on his candidness, his admission he should not have requested or used the files, and his lack of prior discipline to mitigate his conduct. Magistrate Sevcik requested a private admonishment rather than a public reprimand.

## II. Scope of Review.

It is our duty to discipline judicial officers for conduct violating the canons of judicial ethics. Iowa Code § 602.2106(3)(*b*); *see also* Iowa Const. art. V, § 19. We review recommendations for judicial discipline de novo. *In re Block*, 816 N.W.2d 362, 364 (Iowa 2012). "The ethical violation of a judge must be established by a convincing preponderance of the evidence." *In re Dean*, 855 N.W.2d 186, 191 (Iowa 2014).

## III. Violations.

The Iowa Code of Judicial Conduct applies to both judges and part-time magistrates, with some exceptions. *See* Iowa Code of Judicial Conduct ch. 51, Application I, III. The exceptions recognize the leeway

needed for magistrates to balance their duties and responsibilities in the practice of law with the essential attributes of judicial service. The exceptions carve out conduct relating to the judicial restrictions governing the practice of law, select extrajudicial activities, and public statements concerning pending and impending cases when not serving as a judge. *Id.* Application III. Otherwise, the same canons of conduct applicable to Iowa judges apply to magistrates. Additionally, the applicable canons and rules apply to magistrates even when they are wearing the hat of an attorney. In that respect, attorney-magistrates in Iowa can be required to navigate through a host of challenges presented by these dual ethical obligations. They must be vigilant of both sets of rules and be cognizant of the critical importance of upholding both sets of standards.

The conduct of Magistrate Sevcik at issue in this case boils down to his actions in requesting and receiving two confidential court files from a clerk of court, followed by his subsequent use of one of the files during his cross-examination of a witness in a hearing before the district court in which he represented a party in the case. The question is whether his conduct violated rules 51:1.1, 51:1.2, 51:1.3, or 51:3.5.

**A. Rule 51:1.1.** Rule 51:1.1 provides that "[a] judge shall comply with the law, including the Iowa Code of Judicial Conduct." *Id.* r. 51:1.1. Read in the context of the broader canon sought to be upheld and promoted by rule 51:1.1, the rule addresses noncompliance with laws that would undermine the independence, integrity, and impartiality of the judiciary or project impropriety. *See id.* Canon 1. The rule specifically identifies the code of judicial conduct as a part of the laws covered by the rule, but not to make a violation of another judicial conduct rule a separate violation of its provisions. *Cf. Iowa Supreme Ct.*

*Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010) ("The purpose, however, of including [a rule requiring compliance with] the Iowa Rules of Professional Conduct is to give notice to attorneys that they are subject to discipline for violating the rules. The purpose of [the rule] was not to create a separate violation." (Citation omitted.)). Instead, this portion of the rule clarifies that all judges must comply with the rules of judicial conduct. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889–90, 129 S. Ct. 2252, 2266–67, 173 L. Ed. 2d 1208, 1225–26 (2009) (indicating the integrity of the judiciary and the rule of law must be upheld by all judicial officers). Thus, we must consider if the conduct of Magistrate Sevcik constituted noncompliance with the law. If his conduct violated the law, we must further consider if the violation undermined the fundamental attributes of the judiciary sought to be protected by Canon 1.

Under the law, a criminal record of a deferred judgment is expunged following discharge from probation and payment of all financial obligations. Iowa Code § 907.9(4)(*b*). The record is then segregated by the clerk of court in a secure area or database exempt from public access. *Id.* § 907.1(3). The file becomes a confidential record exempt from public access under the open records law, but is available upon request to those agencies or persons granted access to the deferred judgment docket under section 907.4. *Id.* § 907.9(4)(*b*). A judicial magistrate is a person given access to the deferred judgment docket. *Id.* § 907.4(2). The statute does not impose a further requirement that access be limited to purposes related to judicial duties. Thus, a magistrate in Iowa may request and is entitled to access expunged files containing a deferred judgment.

As a result, Magistrate Sevcik did not violate the law by requesting and gaining access to the two expunged criminal files. Furthermore, the Commission did not identify any law he violated by using one of the expunged files other than rule 51:3.5, involving the disclosure or use of nonpublic information for purposes unrelated to judicial duties. *See* Iowa Code of Judicial Conduct r. 51:3.5. We conclude Magistrate Sevcik did not violate rule 51:1.1 and separately consider whether he violated rule 51:3.5.

**B. Rule 51:3.5.** Rule 51:3.5 provides that "[a] judge shall not intentionally disclose or use nonpublic information acquired in a judicial capacity for any purpose unrelated to the judge's judicial duties." *Id.* Two records obtained by Magistrate Sevcik had been expunged. They contained nonpublic information only available to Magistrate Sevcik because of his status as a magistrate. *See* Iowa Code §§ 907.4(2), .9(4)(*b*). As such, the files constituted nonpublic information acquired in his judicial capacity. The remaining question is whether there was evidence of intentional disclosure or use of the information for a purpose unrelated to the judicial duties of the judge.

Magistrate Sevcik violated rule 51:3.5. The record supports a finding that he intentionally disclosed and used information in the expunged files for purposes totally unrelated to his duties as a magistrate. This intentional conduct was most evidenced in his use of one of the files to cross-examine a witness. Additionally, he acquired the files from the clerk of court for purposes unrelated to his judicial duties.

**C. Rule 51:1.2.** Rule 51:1.2 requires judges to act "in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and . . . avoid impropriety and the appearance of impropriety." Iowa Code of Judicial Conduct r. 51:1.2.

" 'Integrity' means probity, fairness, honesty, uprightness, and soundness of character." *Id.* Terminology. "Impropriety" includes "conduct that undermines a judge's independence, integrity, or impartiality." *Id.* The rule focuses on conduct of a judge, not the subjective intent of the judge. *In re Krull*, 860 N.W.2d 38, 45 (Iowa 2015).

A judge who acquires nonpublic information in a judicial capacity and uses the information for purposes unrelated to the judge's judicial duties can undermine the judge's independence, integrity, and impartiality. Here, the conduct by Magistrate Sevcik was in the nature of abuse of power and projected a willingness to misuse judicial authority to benefit his private practice of law. In this case, the violation of rule 51:3.5 also constituted a violation of rule 51:1.2.

**D. Rule 51:1.3.** Rule 51:1.3 provides, "A judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge or others, or allow others to do so." Iowa Code of Judicial Conduct r. 51:1.3. A violation of the rule first requires conduct that abuses "the prestige of judicial office." *Id.* A judgeship is commonly viewed with prestige in society, and a judge must avoid purposely using that prestige to gain special treatment or favoritism. As with the misuse of judicial authority, misuse of the prestige of judicial office can undermine the essential and fundamental qualities of a judge. *In re Meldrum*, 834 N.W.2d 650, 653 (Iowa 2013) (noting previously found abuses of prestige included selling private merchandise in chambers and identifying self as a judge in advertisement for private attorney services); *In re Harned*, 357 N.W.2d 300, 302 (Iowa 1984) (using judicial letterhead for a letter to other magistrate judges about daughter's traffic ticket); Charles Gardner Geyh, et al., *Judicial Conduct and Ethics* § 2.13, at 2-54

to -64 (5th ed. 2013) (listing many possible abuses, including influencing judicial proceedings for self or others, evading traffic tickets, recommendation abuses, and testifying before a jury). As one judge described it, this rule covers any "judge who in any manner gratuitously interjects his or her judicial status in nonofficial dealings with law enforcement officials, school officials, insurance agents, neighbors, judges, or anyone else," either through a specific request for favorable treatment or when exploitation of the office can be inferred from the circumstances. Raymond J. McKoski, *Judicial Discipline and the Appearance of Impropriety: What the Public Sees Is What the Judge Gets*, 94 Minn. L. Rev. 1914, 1970–71 (2010).

Yet, the rule recognizes that a violation requires the judge to engage in conduct that shows the judge is using or attempting to use the prestige of office. The lynchpin of the rule is judicial complicity.

In this case, there was insufficient evidence presented that Magistrate Sevcik projected the prestige of his office to gain access to the expunged records or sought to use the prestige of his office. To the contrary, the clerk of court viewed the request by Magistrate Sevcik as any other request by a judge. Magistrate Sevcik did not display or use his prestige of his judicial position to gain access, and the clerk considered Magistrate Sevcik to be exercising his legal authority to obtain the records. Thus, his conduct did not constitute an abuse of prestige, but an abuse of authority previously addressed by rule 51:3.5.

## IV. Sanction.

"The focus of sanctions in judicial disciplinary proceedings is not to punish the individual judge, but to restore and maintain the dignity, honor, and impartiality of the judicial office, and to protect the public from further excesses." *In re McCormick,* 639 N.W.2d 12, 16 (Iowa 2002).

"The public must be protected, others must be deterred from similar misconduct, and confidence in the judiciary must be vindicated." *In re Eads*, 362 N.W.2d 541, 551 (Iowa 1985). As with attorney discipline cases, we do not have a standard sanction, but instead look to several factors to impose the appropriate sanction for each individual case. *In re Meldrum*, 834 N.W.2d at 654. These factors include,

> (a) whether the misconduct is an isolated instance or evidenced a pattern of [mis]conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his [or her] private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his [or her] conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his [or her] position to satisfy [any] personal desires.

*In re McCormick*, 639 N.W.2d at 16 (alteration in original) (quoting *In re Deming*, 736 P.2d 639, 659 (Wash. 1987) (en banc)). We also consider the sanctions imposed in similar cases. *In re Krull*, 860 N.W.2d at 46.

We have not been presented with a judicial discipline case similar to the facts of this case. In a recent judicial discipline case involving a part-time magistrate who failed to recuse himself from signing warrants due to a conflict of interest, however, we imposed a public reprimand. *Id.* at 49–50. In a case in which a magistrate advertised his services as an attorney while noting he served as a magistrate, we again imposed a public reprimand. *In re Meldrum*, 834 N.W.2d at 654. We have also imposed a public reprimand on a judge convicted of operation of a vehicle while intoxicated. *In re Block*, 816 N.W.2d at 366. We also publicly reprimanded a judge who participated in political activities and

subsequently made a false statement to the Commission regarding those activities. *In re McCormick*, 639 N.W.2d at 17–18.

On the other hand, violations that harm public confidence in a more severe way, such as intoxication while in the courtroom and carrying on a campaign against a local attorney, have merited suspensions. *In re Dean*, 855 N.W.2d at 188, 194 (imposing a thirty-day suspension for holding court while intoxicated); *In re Eads*, 362 N.W.2d at 551 (imposing a sixty-day suspension for "institut[ing] and then carr[ying] on an inexcusable campaign against a lawyer"). We have also suspended a judge for using her office to request leniency for her daughter's speeding ticket. *In re Harned*, 357 N.W.2d at 301–03 (imposing a four-day suspension for using official stationery to write a letter and calling other magistrates to discuss her daughter's speeding ticket).

The Commission recommended a public reprimand. Magistrate Sevcik has requested a private admonishment. "Where a violation involves conduct that is negligent in nature, with little known injury, an admonition or a private reprimand is normally appropriate. *In re McCormick*, 639 N.W.2d at 17. But as we have noted before, "[o]nce we grant an application in whole or in part, we are required to issue a decree. This decree is made public." *In re Block*, 816 N.W.2d at 366 (footnote omitted). Last year in *In re Krull*, we considered the possibility of a public admonition as an intermediate sanction between a private admonition and a public reprimand, noting the option was available if appropriate although we had never issued a public admonition in a judicial discipline application. 860 N.W.2d at 48 & n.4. "We employ professional admonitions not so much by way of criticism as to instruct . . . ." *Comm. on Prof'l Ethics & Conduct v. Liles*, 430 N.W.2d

111, 113 (Iowa 1988); *see also In re Krull*, 860 N.W.2d at 48. Admonitions do not amount to discipline, but signal we do not condone the conduct giving rise to the complaint. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Visser*, 629 N.W.2d 376, 383 (Iowa 2001); *Comm. on Prof'l Ethics & Conduct v. Zimmermann*, 522 N.W.2d 619, 621 (Iowa 1994).

It is unnecessary for us to decide if we should adopt a public admonition as a form of judicial discipline. Considering the nature of the conduct, this case does not present a need for us to provide instruction to magistrates on how to use their authority to access expunged records. The misuse of authority in this case was not the result of a misunderstanding, but a clear violation of the rule against using judicial authority for purposes unrelated to the work of a magistrate.

We agree with the Commission that a public reprimand is the appropriate sanction. It meets the goals of imposing sanctions and is supported by the relevant circumstances in the case.

### V. Conclusion.

We find Magistrate Joseph Sevcik violated Canons 1 and 3 of the Iowa Code of Judicial Conduct as well as rules 51:1.2 and 51:3.5. We reprimand Magistrate Sevcik for his conduct.

**APPLICATION GRANTED; JUDICIAL OFFICER REPRIMANDED.**