# IN THE SUPREME COURT OF IOWA

No. 13–0367

Filed July 19, 2013

**IN THE MATTER OF CLARENCE B. MELDRUM, JR.,**
Judicial Magistrate.

On application of the Iowa Commission on Judicial Qualifications.

The Commission on Judicial Qualifications filed an application to discipline a magistrate. **APPLICATION GRANTED; JUDICIAL OFFICER REPRIMANDED.**

Thomas J. Miller, Attorney General, and Scott D. Brown and Kevin R. Cmelik, Assistant Attorneys General, for complainant.

John M. French of Law Offices of John M. French, Council Bluffs, for respondent.

**APPEL, Justice.**

The Iowa Commission on Judicial Qualifications filed an application in this court recommending a magistrate be publicly reprimanded for publishing an advertisement for his services as a private attorney in which he wore his judicial robes and referred to his position as a magistrate. We find the magistrate violated the Iowa Code of Judicial Conduct and grant the application. We agree the appropriate discipline in this matter is a public reprimand.

## I. Background Facts and Prior Proceedings.

Clarence B. Meldrum, Jr., is a magistrate in Pottawattamie County. He has been a licensed attorney in Iowa for forty-one years. He has been a magistrate since 1993. As a judicial officer, Magistrate Meldrum handled criminal matters, municipal infractions, small claims matters, and matters involving mental health and substance abuse. Since the mid-1990s, he has limited his law practice to bankruptcy, probate, real estate, and tax matters, purportedly to avoid conflict with his position as a magistrate.

In addition to his work in private practice and on the bench, Magistrate Meldrum has served as president of the Pottawattamie County Bar Association, president of the magistrate judges' association, on the board of Legal Services Corporation of Iowa (which is now Iowa Legal Aid), on the policy advisory committee of the legal aid office for the fourth judicial district, and as a volunteer with the Volunteer Lawyer Project. Meldrum received the meritorious service award as a magistrate in 2007, awarded in recognition of his service to the public.

Beginning in 2009, Magistrate Meldrum placed advertisements in phone books circulating in and around Council Bluffs. Both advertisements featured a photograph of Magistrate Meldrum in his

judicial robes. The photograph was taken by the Pottawattamie County Bar Association in 2005 and had previously appeared in a composite photograph hanging in the county courthouse. One of the advertisements also noted his position as an "Iowa Judicial Magistrate." On December 8, 2011, the Commission on Judicial Qualifications charged Magistrate Meldrum with a substantial violation of Canon 1 of the Iowa Judicial Code of Conduct, including rules 51:1.2 and 51:1.3, for abusing the prestige of his judicial office to advance his personal economic interests and for failing to promote the public confidence in the judiciary.

At a hearing on February 1, 2012, when asked about his intent in placing the advertisements, Magistrate Meldrum replied that he wanted to communicate his level of responsibility to potential clients, but that it was not his intent to use the prestige of his judicial office for personal gain or to obtain favorable treatment. He stated:

> My intention in preparing the ad was to communicate to the public in a permissible manner my availability as a private attorney for private legal services, and it was my intention by using the title of magistrate and the photograph in the robes to indicate that I did hold a responsible public position and that I was a reliable attorney with 40 years' practice experience. There was never any intention to indicate that by virtue of my position as a magistrate I could pull any strings, make things happen for people that shouldn't happen.

When asked if he was attempting to use his position as a magistrate to attract clients, Magistrate Meldrum stated:

> Only in the sense that I felt that being a member of the judiciary, and specifically an Iowa Judicial Magistrate, lent credence to my professionalism and my qualifications to represent people. I never intended to indicate that I could use my position as a Judicial Magistrate to effect any— anything for any client, no.

Magistrate Meldrum also agreed it would advance his personal or economic interests if the reference to his judicial office helped him attract business from people who found him to be trustworthy. Magistrate Meldrum expressed his embarrassment, apologized, stated he took the alleged violation to heart, and indicated he had no intention of violating this ethical canon again. The commission found Magistrate Meldrum violated the Iowa Code of Judicial Conduct and recommends a public reprimand.

In arguing Magistrate Meldrum's conduct did not promote public confidence in the independence, integrity, and impartiality of the judiciary, the commission points to Magistrate Meldrum's assertion that he referenced his position as a magistrate in the advertisements to indicate he was responsible and reliable as an attorney. The commission argues that the public could easily construe the advertisement to suggest Magistrate Meldrum is a better attorney than others because he is a magistrate or to suggest that Magistrate Meldrum has better access to or influence over the judicial system.

In response, Magistrate Meldrum sets forth the following reasons as to why he should not be disciplined: (1) his lack of intent to advance his personal and economic interests; (2) that the advertisement could not have advanced his personal or economic interests because of the lack of overlap in practice areas between his job as a magistrate and his private law practice; (3) that the advertisement has been deleted; and (4) that while he diligently reviewed the attorney advertising rules, he had no knowledge that his conduct might violate the code of judicial conduct. He also argues his conduct has not eroded public confidence in the judicial system, which he acknowledges is "the primary goal of judicial

discipline." Further, he argues there is no reason to discipline him to deter other judges from engaging in similar conduct.

## II. Scope of Review.

"Our standard of review of a recommendation of judicial discipline by the commission on judicial qualifications is de novo." *In re McCormick*, 639 N.W.2d 12, 15 (Iowa 2002). A judge's ethical violation must be established by a convincing preponderance of the evidence. *In re Block*, 816 N.W.2d 362, 364 (Iowa 2012); *In re McCormick*, 639 N.W.2d at 15.

## III. Violations.

The first canon of the Iowa Judicial Code of Conduct "addresses the need for judges to preserve the crown jewels of the judiciary—independence, integrity, and impartiality—and directs judges to uphold the fundamental qualities of judging by avoiding impropriety." *In re Block*, 816 N.W.2d at 364. It states, "A judge shall uphold and promote the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety." Iowa Code of Judicial Conduct Canon 1. The rule applies to a judge's conduct on and off the bench. *In re Block*, 816 N.W.2d at 364.

Rule 51:1.2 essentially echoes Canon 1. Rule 51:1.3 provides, "A judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge or others, or allow others to do so." According to the official comment, this rule prohibits a judge from using or attempting to use his or her position "to gain personal advantage or deferential treatment of any kind." Iowa Code of Judicial Conduct R. 51:1.3 cmt. [1]. As an example, the official comment provides that "it would be improper for a judge to allude to his or her judicial status to gain favorable treatment in encounters with public

officials" or for a judge to "use judicial letterhead to gain an advantage in conducting his or her personal business." *Id.*; *see also In re Harned*, 357 N.W.2d 300, 302–03 (Iowa 1984) (disciplining a magistrate who sent a letter on official judicial stationery with her name and title to another magistrate's office in an attempt to influence the outcome of her daughter's speeding ticket). These are not the only examples, however, of improper conduct under the rule. *See, e.g.*, *In re Arrigan*, 678 A.2d 446, 449 (R.I. 1996) (per curiam) (reprimanding an administrative law judge who sold merchandise and raffle tickets for charitable causes in his judicial chambers to attorneys who practiced in his courtroom).

In *In re Judicial Disciplinary Proceedings Against Laatsch*, 727 N.W.2d 488, 489 (Wis. 2007) (per curiam), the Wisconsin Supreme Court publicly reprimanded a municipal judge who identified himself as a judge in an advertisement for his private law practice and had presided over matters involving his client, his niece, and his nephew. With respect to the advertisement, the court stated that the judge "sought to use the prestige of his judicial office to advance his private interests and exploited the judgeship in the hopes of obtaining financial gain." *Id.* at 491. The court cited the judge's great remorse and that he was no longer serving as a judge as mitigating factors. *Id.*

We agree with the Wisconsin court that a magistrate who also practices as a private attorney violates the judicial code of conduct when the magistrate attempts to influence potential clients to use his services as an attorney by using his office as an indicator of his responsible and trustworthy nature. In fact, Magistrate Meldrum concedes that he intended to highlight his qualifications as an attorney by drawing attention to his judicial office. It is not an excuse that Magistrate Meldrum was unaware of the provisions of the Iowa Code of Judicial

Conduct or that his conduct may have violated them. Wearing the hats of magistrate and attorney, Magistrate Meldrum was required to comply with ethical provisions applicable to each. Further, we cannot excuse Magistrate Meldrum's misconduct merely because the advertisements are no longer circulating. Therefore, we find Magistrate Meldrum violated Canon 1 and rules 51:1.2 and 51:1.3.

### IV. Sanction.

We have said that the purpose of judicial discipline proceedings is "to restore public confidence in the system and its officers," not to punish the individual judge. *In re Gerard*, 631 N.W.2d 271, 280 (Iowa 2001) (citation and internal quotation marks omitted); *accord In re Block*, 816 N.W.2d at 365. We also seek "to protect the public from further excesses." *In re McCormick*, 639 N.W.2d at 16. There is no standard sanction in judicial discipline cases. Instead, we rely on a number of factors to fashion an appropriate sanction in each case. The factors include:

> (a) whether the misconduct is an isolated instance or evidenced a pattern of [mis]conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his [or her] private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his [or her] conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his [or her] position to satisfy [any] personal desires.

*Id.* (citation and internal quotation marks omitted).

Though Magistrate Meldrum's advertisements ran for more than one year and in multiple publications, his misconduct is less egregious

than that in other cases involving violations of Canon 1. *Cf. In re Gallagher*, 951 P.2d 705, 708, 716 (Or. 1998) (per curiam) (suspending for six months a judge who sent numerous letters on his official judicial letterhead to influence various parties for personal gain or that of others, such as a letter to a department store about the price of a suit, a letter to an electric company about service at his residence, letters to a golf club indicating he would not be paying his bills, and letters to a city protesting a parking ticket). Magistrate Meldrum did not renew the advertisement after he became aware of the charges against him. Further, Magistrate Meldrum expressed remorse for his violation. We also note Magistrate Meldrum has not been the subject of prior discipline. Finally, Magistrate Meldrum has led a distinguished career on the bench and in the community. In light of the above factors, we conclude a public reprimand is the appropriate sanction.

**V. Conclusion.**

We find Magistrate Meldrum violated Canon 1 of the Iowa Code of Judicial Conduct as well as rules 51:1.2 and 51:1.3. We reprimand Magistrate Meldrum for his conduct.

**APPLICATION GRANTED; JUDICIAL OFFICER REPRIMANDED.**