# IN THE SUPREME COURT OF IOWA

No. 16–0097

Filed June 17, 2016

Amended September 2, 2016

**IN THE MATTER OF JAMES H. MARTINEK,**
A Magistrate.

---

On application of the Iowa Commission on Judicial Qualifications.

The Commission on Judicial Qualifications filed an application to discipline a magistrate. **OPINION ISSUED.**

Thomas J. Miller, Attorney General, and Kevin R. Cmelik and Grant Dugdale, Assistant Attorneys General, for complainant.

Patrick M. Roby and Nicholas J. Kilburg, Elderkin & Pirnie, P.L.C., Cedar Rapids, Iowa, for respondent.

**MANSFIELD, Justice.**

A magistrate maintained a website where he posted information regarding his availability to perform marriage ceremonies at locations other than the courthouse for a fee. The website included some photos of the magistrate wearing his robes while performing such ceremonies. The magistrate self-reported his conduct to the Iowa Commission on Judicial Qualifications after becoming concerned that this website might violate our ethics rules for judicial officers. The Commission found that the magistrate violated the Iowa Code of Judicial Conduct and filed an application for the imposition of judicial discipline. The Commission recommended the magistrate be publicly reprimanded.

After the Commission issued its recommendation but before the matter was submitted to us, the magistrate resigned. Because of the importance of the underlying issues, we will address whether any violations of the Iowa Code of Judicial Conduct occurred. We conclude the code does not *per se* bar a judicial officer from publicizing his availability to perform marriage ceremonies, but some aspects of the advertising here violated the code.

## I. Background Facts and Prior Proceedings.

James Martinek graduated from law school in 1977. He worked for a year as a legal aid attorney in Idaho, and then moved back to Iowa in 1978. He was admitted to practice law in Iowa that same year. After spending approximately one year in the Johnson County attorney's office, Martinek opened a private law practice in Solon. Martinek held a

part-time position as a magistrate in Johnson County from August 2005 until February 2016.[1]

Magistrate Martinek also taught at Kirkwood Community College. At one point, one of his students approached him and suggested that he should have a website for his law firm. The student volunteered her services in creating the site. The website provided basic biographical information, as well as information about his legal practice for prospective and current clients. The website was occasionally updated or altered as needed—Magistrate Martinek would call his former student and communicate his requested changes.

The main page of the website had in large type, "James H. Martinek, Attorney at Law." Thereunder the website indicated that Martinek had a "General Practice, including but not limited to" five categories. The first four were specific areas of legal practice. The fifth was "Marriage ceremonies, including same-sex weddings," with links to "Forms" and "Cost." Below this, the website added on the main page, "James H. Martinek was appointed as a Judicial Magistrate for the 6th Judicial District in 2005. He holds Court in Johnson County."

Additionally, the website had a marriage information section detailing Magistrate Martinek's willingness to perform marriage ceremonies. The section informed visitors to the site how to apply for a marriage license and provided a link to a letter that stated Magistrate Martinek "enjoy[ed] performing marriage ceremonies" and would "make every effort to schedule them" when possible. The letter advised that interested couples would need a marriage license from the Johnson

---

[1]Because this case relates to Martinek's conduct while he was a magistrate, we shall refer to him as Magistrate Martinek.

County recorder's office, that witnesses were required, and that Magistrate Martinek's fee for the ceremony would be $200. Additional links on the information tab were provided to Iowa's instructions for filling out an application for marriage, an application for a marriage license, an application for a waiver of the three-day waiting period, sample vows for traditional and same-sex marriages, and an application for a social security card. This section of the website featured photos of Magistrate Martinek performing weddings, including same-sex weddings, as well as photographs of possible venues for weddings.

Two photos showed Magistrate Martinek wearing his judicial robes—one where he was just sitting on the bench and one where he was performing a same-sex marriage ceremony. The website did not advise that Magistrate Martinek also performed marriage ceremonies for free during official duty hours at the courthouse.

After our July 19, 2013 decision in *In re Meldrum*, 834 N.W.2d 650 (Iowa 2013), Magistrate Martinek became concerned because his website featured photos of him wearing his judicial robes. He showed the website to friends and colleagues who agreed the page might be problematic. He contacted the former student who helped with the website and asked her to take down the photographs in which he was wearing his judicial robes. He then telephoned the executive secretary of the Commission on Judicial Qualifications. After this discussion, Magistrate Martinek decided to self-report the possible violation.

In his July 22 letter to the Commission, Magistrate Martinek stated that he maintained a website connected with his law practice for two reasons. The first was to inform potential clients of the legal services he regularly provided, including forms for some of those services like living wills or medical powers of attorney. The second was "to provide

information to those individuals seeking to be married in Iowa." Magistrate Martinek explained,

> [T]he reason I set the website up in the first place was to have a place where I could refer people to get a copy of my marriage ceremony and general information with regard to weddings, witnesses, and costs.
>
> . . . .
>
> I have a number of photos on my website and they were selected to give people who would be unfamiliar with Johnson County an idea of what the County Administration Building looked like, so they could get their marriage license and some possible sites for a wedding. I have several sites from Kent Park, a site on the University of Iowa campus, and a picture of me (without a robe) performing a wedding at a Hawkeye game. In addition to these photos, I also had two pictures of myself wearing my judicial robe. One was simply a picture of me in my robe at the courthouse . . . . The second photograph showed me in my robe marrying a same sex couple on the University of Iowa campus.
>
> . . . .
>
> Both of these photographs have been removed. I now recognize after reading the *Meldrum* decision that when this wedding information was taken with the balance of my website, it could look like I was promoting myself, through my judicial appointment, as a more trustworthy or competent attorney to p[ro]spective clients. While that certainly was not my intention, I recognize that it could be the result.

On October 7, the Commission charged Magistrate Martinek with violations of Canon 1 of the Iowa Code of Judicial Conduct, including rule 51:1.2 (failure to promote public confidence in the judiciary) and rule 51:1.3 (abuse of the prestige of judicial office). Magistrate Martinek responded, denying the alleged rule violations. He stated that the marriage information section was included on his website for informational purposes only for the benefit of parties interested in having him perform a ceremony at a location other than the courthouse. He explained, "At no time did Magistrate Martinek seek to mislead the public

on the issue of performing marriages free of charge during regular magistrate work hours at the courthouse."

A hearing took place before the Commission on December 4. At the hearing, Magistrate Martinek furnished additional information about his reasons for including a marriage section on his law firm website. As Magistrate Martinek explained, an interested individual would generally call the county recorder's office and be referred to those judges and magistrates willing to perform marriage ceremonies. When he set up this section of his website, there were two magistrates and one district associate judge available in Johnson County for marriage ceremonies; however, the district judge was not available after hours. Magistrate Martinek introduced into evidence a copy of a past webpage from the Johnson County recorder's office website that stated, "Important: The Court house does not perform 'on the spot' marriages. Below are the names and numbers of local magistrates." The names of two magistrate judges—including Magistrate Martinek—and one district judge appeared beneath the advisory.

Magistrate Martinek, a former legal aid attorney, always began his conversations with parties interested in marriage ceremonies by telling them they could be married for free at the courthouse. After our decision in *Varnum v. Brien,* 763 N.W.2d 862 (Iowa 2009), the number of calls that Magistrate Martinek received asking about marriage ceremonies greatly increased and he "couldn't keep up." Calls were coming from across the country. Magistrate Martinek put the marriage information tab on the website "because [he] couldn't spend that much time on the phone with all the people that were calling." Although he told every caller that marriage ceremonies were free if performed at the courthouse, "[t]he vast majority of people did not want that," but "wanted to have one

of the other venues." Magistrate Martinek never asked the Johnson County clerk's office to direct anyone to his website.

Magistrate Martinek took responsibility for the information on the website, but he admitted to a lack of familiarity with the technology. He said he told the former student who set up the website that he did not want to advertise. He believed that people would only reach the site after being directed there over the phone because he "thought you had to register" or "take some action to have a search engine pick you up." After Magistrate Martinek self-reported, the photos showing him in judicial robes were taken down from the website, but other wedding-related photos remained.

In response to questioning, Magistrate Martinek also stated that he could not be sure how many marriage ceremonies he performed because he did not always charge the fee, depending on the situation. He probably performed the most weddings right after the *Varnum* decision. He was performing fewer by the time of the Commission hearing because the recorder's office website was now identifying seven judges available for marriage ceremonies. Magistrate Martinek did not separately track his wedding ceremony income (it was accounted for with his law practice income), but he thought it amounted to one to two thousand dollars per year.

More than two years after the December 4, 2013 hearing, the Commission concluded that Magistrate Martinek had violated the Iowa Code of Judicial Conduct and filed an application to discipline a judicial officer under Iowa Code section 602.2106 (2013). In its January 15, 2016 application, the Commission stated,

> Judge Martinek's merger of judicial position with his private law practice on the website for his law firm leads to the conclusion that he engaged in misconduct in his official

capacity and was exploiting his position both to bolster his credentials as a private attorney, and to solicit wedding business for which he would be paid a fee.

The Commission determined that Magistrate Martinek had violated Canon 1 and rules 51:1.2 and 51:1.3 and recommended a public reprimand.

## II. Standard of Review.

We review recommendations of judicial discipline from the Commission on Judicial Qualifications de novo. *Meldrum*, 834 N.W.2d at 652. The Commission must establish ethical violations by a convincing preponderance of the evidence. *In re Block*, 816 N.W.2d 362, 364 (Iowa 2012).

## III. Mootness.

We must deal with a threshold issue. Magistrate Martinek resigned his position in February 2016, before this case was submitted to us and orally argued. There is no indication in the record that Magistrate Martinek resigned in order to avoid discipline.

The Iowa Code gives us authority to "[d]iscipline . . . the judicial officer" upon application by the Commission and appropriate findings. Iowa Code § 602.2106(3)(*b*). At the time the Commission made application to us for discipline on January 15, Martinek was still a magistrate. Generally, subject-matter jurisdiction is determined at the time of filing. "Courts have long recognized that 'the jurisdiction of the [c]ourt depends upon the state of things at the time of the action brought.' " *Heartland Express v. Gardner*, 675 N.W.2d 259, 266 (Iowa 2003) (alteration in original) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S. Ct. 2035, 2040, 124 L. Ed. 2d 118, 127–28 (1993)). However, in the past, we have declined to discipline judicial officers who resigned their positions before the discipline would have become

effective. *See In re Inquiry Concerning Holien*, 612 N.W.2d 789, 798 (Iowa 2000).

Under the circumstances, we decline to address the question of discipline but simply issue an opinion discussing whether Magistrate Martinek's conduct violated the Iowa Code of Judicial Conduct. It is our expectation and hope that this decision will provide guidance to judicial officers in our state.

**IV. Violations.**

Canon 1 of the Iowa Code of Judicial Conduct requires judges to "avoid impropriety and the appearance of impropriety." Iowa Code of Judicial Conduct, Canon 1. Its accompanying rules give the canon scope and provide clarity regarding prohibited conduct. *See Block*, 816 N.W.2d at 364. Rule 51:1.2 requires judges to "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary." Iowa Code of Judicial Conduct R. 51:1.2. Rule 51:1.3 states that "[a] judge shall not abuse the prestige of judicial office to advance [his or her] personal or economic interests." *Id.* r. 51:1.3. In summing up the goals of the canon and rules, we recently stated:

> [T]he canon not only captures conduct that violates the law, but also includes conduct that may not violate the law but nevertheless diminishes public confidence in the judiciary. It also includes conduct of a judge both on and off the bench. Together the canon and its accompanying rules emphasize that the independence, integrity, and impartiality of the judiciary are preserved when judges avoid impropriety.

*Block*, 816 N.W.2d at 364.

We first consider whether Magistrate Martinek violated the Iowa Code of Judicial Conduct merely by advertising that he performed weddings for a fee, regardless of the circumstances and content of the

advertising. The Judicial Ethics Board of the Colorado Supreme Court addressed this issue in an advisory ethics opinion wherein the board concluded that judges may not advertise their availability to perform wedding ceremonies. Colo. Judicial Ethics Advisory Bd., Advisory Op. 2007-05, 2007 WL 7603068, at *1 (2007).

In Colorado, as in Iowa, "judges and magistrates may charge a fee for weddings performed outside of normal business hours, but they may not receive compensation of any kind for performing this service during normal business hours." *Id.* A Colorado judge inquired whether "a judicial officer may advertise her availability or solicit business as a wedding officiant." *Id.* In particular, this judge wanted to make her availability for ceremonies known by sending fliers or letters to wedding planners. *Id.* Colorado's ethical canons, like Iowa's, prohibited judges from using their position for financial gain or personal benefit. *See id.* In light of these prohibitions, the board ruled that "a judge may not send fliers to wedding planners or otherwise advertise her availability to perform weddings, such as through a personal web site or yellow pages advertisement." *Id.* The board indicated that judges could list their names on a court or recorder's office website to show their willingness to perform marriage ceremonies. *Id.* at *2.

While we have carefully considered the views of the Colorado board, we are not persuaded that merely publicizing on a website the fact that one performs marriage ceremonies for a fee undermines public confidence in the judiciary or amounts to an abuse of the prestige of judicial office. Iowa law authorizes judges and magistrates to perform marriage ceremonies outside regular business hours for a reasonable fee subject to a maximum prescribed by this court. Iowa Code § 595.12(1). So clearly a magistrate's *performance* of a wedding for $200 or less

outside regular business hours does not violate the Iowa Code of Judicial Conduct.

The question then becomes what a judge or magistrate can do to *get the word out* for those persons who might prefer such a ceremony rather than a basic solemnization at the courthouse during regular business hours. Colorado would limit publicity to a list on the official taxpayer-supported website of judicial officers willing to perform weddings and official contact information. The persons to be married would then have to find the list, and contact the judge or magistrate directly. These direct contacts might well occur during regular court hours, during which the judicial officer could be asked about off-duty availability, venues, fees, and the like. In some instances, the judicial officers listed on the official website would only be willing and available to do ceremonies outside of business hours and away from the courtroom, for which they can charge a fee.

While we have no problem with the approach approved in Colorado, we have difficulty seeing that it marks the definitive line between proper and improper judicial behavior.[2] If a judicial officer is legally authorized to perform off-hours weddings for a reasonable fee *because* he or she is a judicial officer, how does it amount to an abuse of the office for the officer to let the public know that? Why would it undermine confidence in the judiciary for a judicial officer, at the officer's own expense, to make known to the public his or her availability to perform marriage ceremonies on a website when it does not undermine

---

[2]It is also noteworthy that the Colorado opinion was a judicial ethics board advisory opinion. It was not a judicial discipline proceeding sanctioning a judicial officer.

confidence in the judiciary for this service to be provided either at public expense or through an informal word-of-mouth process?

Performing marriage ceremonies is, as noted by the Colorado ethics board, "an important public service." Advisory Op. 2007-05, 2007 WL 7603068, at *1. People increasingly rely on the Internet rather than the telephone for getting information. We believe the public benefits when people can find out, relatively quickly and easily from the Internet, which judicial officers are willing to perform weddings outside regular business hours and under what conditions. That is especially true when the information can be delivered without using public resources, including the time that judicial officers and judicial employees are supposed to be devoting to their official duties.

As noted above, the calls coming in to Magistrate Martinek increased dramatically after *Varnum.* Due to the limited number of judges willing to perform such ceremonies in his county, he posted the information to respond to the demand for his services and save himself time on the phone.

The Commission found that Magistrate Martinek's advertisement of his availability to perform weddings was intended to "advance his personal and economic interests." *See* Iowa Code of Judicial Conduct R. 51:1.3. That may be true, but a violation of rule 51:1.3 also requires an "abuse [of] the prestige of judicial office," which we cannot find based merely on the fact Magistrate Martinek advertised a service that judicial officers are authorized to provide. *See In re Inquiry Concerning Sevcik*, 877 N.W.2d 707, 713 (Iowa 2016) (noting that a rule 51:1.3 violation involves exploitation of the judicial office to obtain "special treatment or favoritism").

This then leads us to the second issue—namely, whether Magistrate Martinek's particular *form* of advertising exceeded the boundaries of the Iowa Code of Judicial Conduct. Our own recent decision in *Meldrum*, which prompted Magistrate Martinek to seek advice concerning his conduct, addressed the advertising of private legal services by judicial officers. *See* 834 N.W.2d at 652. In that case, a magistrate promoted his legal services in phone books with a photograph depicting him wearing his judicial robes. *Id.* at 651. One of his advertisements stated that he was an "Iowa Judicial Magistrate." *Id.* The Commission charged the magistrate with violating Canon 1 and rules 51:1.2 and 51:1.3. *Id.* Magistrate Meldrum stated at a hearing that the advertisements were intended to communicate his "availability as a private attorney for private legal services, and it was [his] intention by using the title of magistrate and the photograph in the robes to indicate that [he held] a responsible public position." *Id.* at 652. He did not intend to imply that he could use his judicial position for the benefit of potential clients. *Id.* We found that Magistrate Meldrum had violated Canon 1 and the accompanying rules and publicly reprimanded him. *Id.* at 653–54.

As we noted in *Meldrum*, the official comment to rule 51:1.3 states that judges may not "use or attempt to use his or her position to gain personal advantage or deferential treatment of any kind." Iowa Code of Judicial Conduct R. 51:1.3 cmt. [1]; *see Meldrum*, 834 N.W.2d at 653. For example, a judge may "not use judicial letterhead to gain an advantage in conducting his or her personal business." Iowa Code of Judicial Conduct R. 51:1.3 cmt. [1].

The key point in *Meldrum*, though, was that the magistrate was conspicuously using his status as a judicial officer as part of his

advertising for private legal business. As we put it, the problem was that the magistrate was "attempt[ing] to influence potential clients to use his services as an attorney . . . . by drawing attention to his judicial office." 834 N.W.2d at 653. Here, by contrast, Magistrate Martinek used his judicial robes to promote work he could only perform by virtue of being a judicial officer.

Yet there is an overlap between the two cases. Like Magistrate Meldrum, Magistrate Martinek featured his status as a judicial officer, including his judicial robes, in private law practice advertising. Given that Magistrate Martinek wished to advertise his availability as a judicial officer to perform weddings as permitted by Iowa law, the better course of action would have been to do so separate from his private law practice website. We agree with the Commission that "Judge Martinek's merger of his judicial position with his private law practice on the website" was inappropriate. Someone interested in hiring Magistrate Martinek to perform legal services might have been directed to his advertising relating to marriage ceremonies, and vice versa.[3] And the use of judicial robes on an unofficial website might "boost [a judicial officer's] message" improperly, as compared to the messages of other potential wedding officiants. *See Jenevein v. Willing*, 493 F.3d 551, 560 (5th Cir. 2007). "The state has a compelling interest in preserving the integrity of the courtroom, and judicial use of the robe, which symbolically sets aside the judge's individuality and passions." *Id.*

---

[3]We are not deciding today that merely disclosing on one's private practice website that one holds a position as a magistrate or on the judicial website that one is engaged in private practice violates the Code of Judicial Conduct. We note that numerous magistrate biographies on our own official website—www.iowacourts.gov— mention that the magistrate is also engaged in private practice.

The Commission also faulted Magistrate Martinek for not disclosing on the website that he would perform weddings at the courthouse for no charge. Magistrate Martinek testified that he nonetheless provided this information at the beginning of the conversation whenever anyone contacted him. No evidence to the contrary was presented. Thus, we have no reason to believe that anyone was actually misled by the website. However, we agree the proper course of action would have been to include both marriage ceremony alternatives on the website. This would have avoided a possible undermining of public confidence in the integrity of the judiciary. The public expects judges to be even-handed and not to steer people toward a choice that personally benefits them. Any advertising should reflect that evenhandedness.

Hence, we conclude Magistrate Martinek committed violations of Canon 1 and rules 51:1.2 and 51:1.3 by (1) including advertising about performing marriage ceremonies on his private law practice website, (2) including photos of himself in his judicial robes on his private law practice website, and (3) not disclosing in his advertising that he would perform weddings for no charge during his regular office hours at the courthouse.

## V. Conclusion.

We find Magistrate Martinek violated Canon 1 and rules 51:1.2 and 51:1.3 of the Iowa Code of Judicial Conduct. For the reasons previously stated, we do not address the question of discipline for these violations.

**OPINION ISSUED.**

All justices concur except Zager, J., who concurs specially.

**ZAGER, Justice (concurring specially).**

I concur in the majority opinion. I write separately to voice my disagreement with what I see as the majority minimizing the violation of our rules. In my opinion, a judge placing a marriage tab on a private law practice website is clearly an "abuse [of] the prestige of judicial office to advance the personal or economic interests of the judge." Iowa Code of Judicial Conduct R. 51:1.3. The only reason that a private attorney would have such a tab on his or her website is because he or she is a judicial officer who can perform marriage ceremonies. In other words, the ability to perform marriage ceremonies *is* a prestige of judicial office.

Clearly, all judicial officers are entitled to perform marriage ceremonies with certain restrictions. *See* Iowa Code § 595.12(1). However, the advertising on Magistrate Martinek's website went far beyond what I believe should be allowed under our rules. A marriage tab on a judicial officer's private law practice website smacks of the unseemly creation of a cottage industry. As acknowledged by Martinek, he created the marriage tab on his website both to address the increased demand for marriage services after our decision in *Varnum v. Brien*, 763 N.W.2d 862 (Iowa 2009) and to save himself time. While I do not dispute that performing marriage ceremonies is an important public service, it is not the primary duty of our judicial officers. Further, because an exchange of money occurs when a judicial officer performs a wedding outside regular business hours, we should expect our judicial officers not to exploit their ability to provide such services for their own personal and economic interests.

Unlike the majority, I do not accept the idea the ethics violation Martinek committed is somehow diminished because Martinek was

responding to increased demand for his services and thought advertising in this way would save him time on the phone. The majority does not disagree with the Commission's conclusion that the advertising on Martinek's website was intended to "advance [his] personal and economic interests." *See* Iowa Code of Judicial Conduct R. 51:1.3. Yet the majority somehow concludes Martinek's advertising the judicial services he performed to advance his own interests did not amount to an "abuse [of] the prestige of judicial office." *See id.* I disagree.

Instead, I would adopt the rule endorsed by the Colorado Judicial Ethics Advisory Board, which advised Colorado judicial officers that "a judge may not send fliers to wedding planners or otherwise advertise [his or] her availability to perform weddings, such as through a personal website or yellow pages advertisement." Colo. Judicial Ethics Advisory Bd., Op. 2007-05, 2007 WL 7603068, at *1 (2007). This is a commonsense, bright-line rule all judicial officers should be expected to follow. Here, as in many jurisdictions today, a judicial officer may have his or her name and contact information displayed on a court's official website or posted at the courthouse. *See id.* at *2. The judicial officers are also generally free to make whatever arrangements are convenient for them and for members of the public who request their services. *See* Iowa Code § 595.12(1). Unlike the majority, I perceive judicial officers advertising services they are able to provide due to the prestige of judicial office to be a serious problem—even if the advertising is *not* associated with a private law practice. Do we really want our judicial officers advertising for wedding services on the Internet or through the yellow pages? I think such advertising amounts to a violation of our canons and rules—even when it is *not* connected to a private law practice. For these reasons, I specially concur.